# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF KANSAS

| | |
|---|---|
| OTTAWA BANCSHARES, INC. | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:23-cv-2444 ) |
| GREAT AMERICAN SECURITY INSURANCE COMPANY, | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |

## COMPLAINT

For its Complaint against Defendant Great American Security Insurance Company ("Great American"), Plaintiff Ottawa Bancshares, Inc. ("Ottawa Bancshares") states and alleges as follows:

## BACKGROUND

1. This is a lawsuit over the insurance coverage that Ottawa Bancshares paid for, Great American agreed to provide, and Great American wrongfully denied on an unsupportable basis: "late notice" when Ottawa Bancshares reported the claim ten days after the filing of the underlying lawsuit seeking damages for breach of contract, unjust enrichment, negligent misrepresentation, and fraud, and well within the policy period.

2. Ottawa Bancshares is a Kansas bank holding company that owns several local and regional Kansas banks. Ottawa Bancshares put its trust in Great American and purchased among other policies a D&O package policy.

3. That D&O Policy broadly covers a large range of business risks during the policy period extending from September 26, 2021, to September 26, 2024, including lawsuits like *Methods Research, Inc. v. Ottawa Bancshares, Inc., et al.*, Case No. Case No. 2:23-CV-02136 (the

"MRI Lawsuit") filed against Ottawa Bancshares and four of its affiliated banks (First Bank Kansas, First Kansas Bank, Lyon County State Bank, and Commercial Bank (the "Banks")) on March 24, 2023.

4. Ottawa Bancshares promptly notified Great American of the claim on April 3, 2023—ten days after the filing of the MRI Lawsuit.

5. Great American sat on the claim for months. Eventually, having found no valid justification in the policy or the law to deny the claim, Great American acknowledged that the broad coverage it wrote for Ottawa Bancshares in the D&O Policy would cover the lawsuit . . . but for what Great American asserted was "late notice."

6. According to Great American, despite providing notice within the policy period and within 10 days of being sued on claims that Great American admits springs coverage under its D&O Policy, Ottawa Bancshares' notice was sufficiently "late" to entitle Great American to deny coverage in full.

7. Great American made no attempt to explain nor can it explain how it was prejudiced by the alleged "late notice."

8. Great American has not offered Ottawa Bancshares any analysis of how this notice could possibly be deemed "late" or untimely given the policy language, the policy period, and applicable law.

9. As a result of Great American's vexatious and bad faith denial, Ottawa Bancshares has been forced to pay significant legal fees and defense costs clearly covered by the D&O Policy, and further, it faces liability exposure for covered conduct alleged in the MRI Lawsuit.

10. Ottawa Bancshares has given Great American ample time and opportunities to back away from its wrongful position. Ottawa Bancshares explained the obvious disconnect between

Great American's denial and the facts and law in a detailed objection letter to which Great American has not responded. Instead, Great American engaged in delay and seemingly stall tactics aimed at stringing Ottawa Bancshares along in the hopes it will just go away.

11. Ottawa Bancshares will not go away. Ottawa Bancshares purchased the D&O Policy for the specific purpose of limiting risks and exposure like the MRI Lawsuit, paid the premiums, and gave notice as required by the D&O Policy.

12. Great American is in breach of the D&O Policy and its fiduciary duties to act in good faith in its treatment of its insured. Great American's coverage denial is objectively baseless, in direct conflict with the language of the D&O Policy, and in direct conflict with decades' worth of well-settled law.

13. Great American owes Ottawa Bancshares defense costs incurred in the underlying litigation, including pre-tender defense costs, and is contractually and statutorily liable for Ottawa Bancshares' costs incurred in prosecuting this action under the policy language and under K.S.A. 40-256.

## PARTIES AND JURISDICTION

14. Ottawa Bancshares is a corporation organized and existing under the laws of the State of Kansas and has its principal place of business at 235 S. Santa Fe Avenue, Salina, Kansas, 67401. Ottawa Bancshares is qualified to do business in Kansas and is in good standing under the laws of the State of Kansas.

15. Upon information and belief, Great American is a corporation organized and existing under the laws of the State of Ohio and has its principal place of business in the State of Ohio.

16. This Court has personal jurisdiction over Great American because it regularly conducts and transacts business in the State of Kansas, including with regard to the issues underlying this lawsuit, namely, issuing and delivering the insurance policy at issue to a Kansas insured at its Kansas headquarters for risks arising from the insureds' Kansas business activities, sending wrongful coverage communications to the insureds in Kansas, and committing acts of bad faith directed to the insureds in Kansas.

17. The Court has jurisdiction over this dispute under 28 U.S.C. § 1332(a), because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18. Venue is proper in this Court under 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL COUNTS

19. This is an insurance coverage action for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing regarding Great American's vexatious and unjustifiable refusal to honor its coverage obligations in the D&O Policy even though Ottawa Bancshares paid substantial premiums and has satisfied all conditions precedent to coverage.

### The Policy

20. In exchange for significant premiums, Great American issued a package insurance policy titled a Directors & Officers Liability Policy, identified by policy number DNOE421310 (the "D&O Policy"). A copy of the D&O Policy is attached as **Exhibit A**. The D&O Policy is incorporated herein by reference.

21. The first named insured under the D&O Policy is Ottawa Bancshares; all four of the Banks are also listed as "Named Insured(s)." (Ottawa Bancshares and the Banks are referred to together as the "Ottawa Policyholders.")

4

22. The D&O Policy contains a D&O coverage form (with four insuring agreements as well as some additional and extended coverages), with each insuring agreement providing coverage up to liability limits of $6,000,000, with most coverages subject to retentions.

23. In addition, the D&O Policy contains a Fiduciary Liability coverage part, a Trust Services Liability coverage part, an Employment Practices Liability coverage part, and, as most relevant here, a "Broad Form Company Liability" coverage part with $6,000,000 in liability limits.

24. Under the Broad Form coverage part, Great American agreed to pay, on the Ottawa Policyholders' behalf, for "**Loss**" for which the Ottawa Policyholders are obligated to pay for "**Wrongful Acts**" resulting from "**Claims**" first made during the "**Policy Period**" which are "involving or relating to" lending and other professional services by the Ottawa Policyholders "or . . . other causes of action."

25. The D&O Policy defines "**Wrongful Acts**" broadly to include any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by a relevant entity.

26. The D&O Policy defines "**Claim**" in part to include written demands for monetary damages and non-monetary relief and to civil proceedings, but in all cases limits the definition to only include such proceedings "to the extent coverage is granted" to the Ottawa Policyholders.

27. The D&O Policy defines "**Loss**" to include "**Defense Costs**," which in turn includes paying for Ottawa Bancshares' attorneys' fees.

28. The D&O Policy is a "claims-made" policy, covering only those "**Claims**" made during the policy period. The D&O Policy does not have an accompanying provision requiring that a claim be reported during the policy period, but provides that notice must be provided no later than 180 days after the end of the policy period if the policy is renewed (unless certain

conditions are met, in which case notice after that point is accepted), or 90 days after expiration if nonrenewed, or after termination of an extended reporting period if purchased.

### The Pre-Litigation Settlement Demand

29. On February 18, 2022, counsel for MRI submitted a "Pre-Litigation Settlement Demand" to Ottawa Bancshares and the Banks, alleging their law firm was retained "to investigate and prosecute a lawsuit for breach of contract." A copy of that demand is attached as **Exhibit B** (the "MRI Demand").

30. Thereafter, MRI and the Ottawa Policyholders attempted to informally resolve the issues MRI raised in its prior demand in the hopes of avoiding costly litigation. Despite the Ottawa Policyholders' best efforts, attempts to informally resolve MRI's issues failed.

### The MRI Lawsuit

31. On March 24, 2023, after it had become clear MRI and the Ottawa Policyholders were at an impasse, MRI filed the MRI Lawsuit. A copy of the underlying complaint is attached as **Exhibit C**.

32. Unlike the MRI Demand, the MRI Lawsuit alleged new claims and theories of recovery, including tort and equitable theories. In total, the MRI Lawsuit alleges five separate counts: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) negligent misrepresentation, and (5) fraud.

### Great American's "Investigation" and Wrongful Denial of Coverage

33. On April 3, 2023, ten days after being sued, the Ottawa Policyholders submitted the claim to Great American.

34. Three days later, on April 6, 2023, Great American reached out to the Ottawa Policyholders.

35. In that correspondence, Great American took the position that no defense costs would apply to reduce the self-insured retention until Great American consented to the Ottawa Policyholders' choice of counsel. Great American did not, then or after, cite any policy provisions or legal authorities for this position.

36. On April 12, 2023, after being advised of the Ottawa Policyholders' choice of counsel, Great American requested attorney bios and rates, and imposed a "Billing Policy" on the underlying counsel.

37. On April 20, 2023, Great American consented to the Ottawa Policyholders' counsel and requested numerous documents for her claimed coverage investigation. The Ottawa Policyholders promptly provided all requested information.

38. That "investigation" lasted approximately three (3) months and resulted in Great American issuing an objectively meritless basis to deny coverage.

39. In the months that followed, Great American refused and failed to promptly respond to communications by the Ottawa Policyholders as required of it under K.A.R. 40-1-34, K.S.A. 40-2404, and the D&O Policy.

40. On July 14, 2023, Great American asked the Ottawa Policyholders to verify the date they learned of the February 18, 2022 Demand.

41. Three days later, on July 17, 2023, Great American sent a letter denying coverage. In the letter, Great American acknowledged that the substantive provisions of the D&O Policy cover the claim, which Great American apparently construed as including both the MRI Demand and the MRI Lawsuit. Great American nevertheless denied all coverage and a defense based on the conclusory assertion that there was a failure to provide "timely" notice.

42. Specifically, Great American stated:

> While it appears the basic requirements to trigger potential coverage for a Claim under the [Broad Form Company Liability coverage part] are otherwise present, timely notice, a condition precedent to coverage, was not provided.

A copy of the denial letter is attached as **Exhibit D**.

43. As described in the denial letter, the gist of Great American's position is that there was a "Claim" made during the policy period (which is true), one "Claim" was the MRI Demand, and the Ottawa Policyholders' knowledge of the MRI Demand and "untimely" notice to Great American negated coverage for both the MRI Demand and the MRI Lawsuit filed ten days prior to Ottawa Policyholders' notice to Great American.

44. This position lacks any reasonable basis.

45. One of the oldest, most well-established rules in the world of insurance law is what is often called the "notice-prejudice" rule, under which a failure to comply with a prompt notice provision is immaterial to coverage under the subject policy unless the insurer can prove that it was substantially prejudiced by the timing of the notice. Indeed, under Kansas law, "conditions precedent" to coverage are subject generally to the prejudice rule because the law abhors a forfeiture of substantive rights (including bargained-for contractual rights) on technical grounds where there is no prejudice to the party seeking to escape its obligations.

46. The notice provision at issue here is exactly that type of notice provision: it states that notice "as soon as practicable" is a "condition precedent" to coverage.

47. Great American did not provide any substantive analysis or rationale regarding the "as soon as practicable" provision, only asserting as a conclusory matter that it was not satisfied. Great American has not and cannot demonstrate prejudice.

48. Shortly after Great American's wrongful denial, on July 28, 2023, counsel for Ottawa Bancshares sent a letter to Great American requesting reconsideration of the denial. A copy of that letter is attached as **Exhibit E**.

49. On July 31, 2023, Great American responded to the letter, stating that it would "review and respond shortly."

50. Weeks went by, and Great American did not respond or provide any updates.

51. On September 11, 2023, counsel for the Ottawa Policyholders corresponded with Great American requesting when a response would be forthcoming to the request for reconsideration of the wrongful denial of coverage.

52. Great American responded that day via email: "We continue to review, and it sits with leadership at the moment. I will keep you informed as so[on] as I have more information."

53. Between September 11, 2023, and September 24, 2023, Great American remained silent.

54. On September 24, 2023, counsel for the Ottawa Policyholders again requested Great American withdraw its wrongful denial of coverage.

55. Great American responded on September 28, 2023, but did not acknowledge coverage or withdraw the wrongful denial.

56. Instead, in a September 28, 2023 email, Great American misrepresented the coverage under the D&O Policy, suggesting that Great American has no coverage obligations under the D&O Policy until a duty to indemnify a judgment or settlement arises.

57. This suggestion is contrary to the D&O Policy, which expressly obligates Great American to advance defense costs on a current basis. Great American has failed and refused to do so in breach of the D&O Policy.

58. Great American has persisted in its wrongful denial of coverage without providing any analysis of the D&O Policy or the law to support Great American's denial – because Great American's denial cannot be supported by the D&O Policy's language or the law.

## Count I
## Declaratory Judgment for Coverage

59. Ottawa Bancshares incorporates all prior allegations in this Complaint as if set forth in full in Count I.

60. There is an actual controversy between the parties because Great American has wrongfully construed the D&O Policy and the law and denied coverage based on an unsupported assertion of untimely notice.

61. Accordingly, under 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of the parties.

62. Among other things, the D&O Policy covers the defense costs incurred by the Ottawa Policyholders in the MRI Demand and in the MRI Lawsuit in excess of the retention.

63. Great American has wrongfully contended that it has no coverage obligations.

64. In doing so, Great American has negligently, recklessly, and in bad faith, breached its obligations as set forth in the D&O Policy sold to Ottawa Bancshares. Specifically, Great American has, without limitation:

   a. Conducted an investigation with no intent of honoring its coverage obligations but rather to generate a coverage denial even if it turned out, as it did, to be baseless;
   b. Wrongfully issued a coverage denial that is objectively baseless;
   c. Refused to provide any reasonable interpretation to the provisions in the D&O Policy;
   d. Failed to provide Ottawa Bancshares with a legitimate explanation of its coverage position;

  e. Failed to acknowledge and timely respond to pertinent communications from the Ottawa Policyholders as Great American was obligated under the D&O Policy and K.A.R. 40-1-34 and K.S.A. 40-2404;

  f. Repudiated its obligation to pay for covered losses, including those already incurred and will continue to be incurred in defense, as well its obligations to cover a settlement or a judgment;

  g. Refused to pay Ottawa Bancshares' costs incurred to date in defense of the MRI Demand; and

  h. Refused to pay Ottawa Bancshares' costs incurred to date in defense of the MRI Lawsuit.

  65. For each of these enumerated reasons, Great American has rejected, repudiated, and breached its coverage obligations to Ottawa Bancshares.

  66. As a direct and proximate result of these breaches, the Ottawa Policyholders are entitled to a declaration that Great American is obligated under the D&O Policy to pay for all costs incurred by Ottawa Bancshares in defense of the MRI Demand and the MRI Lawsuit in excess of the retention, and any potential settlement or judgment as provided under the terms of the D&O Policy.

## Count II
### Breach of Contract—Denial of Coverage Obligations

  67. Ottawa Bancshares incorporates by reference all prior allegations in this Complaint as if set forth in full in Count II.

  68. Among other things, the D&O Policy covers the defense costs incurred by the Ottawa Policyholders in the MRI Demand and in the MRI Lawsuit in excess of the retention.

  69. Great American has wrongfully contended that it has no coverage obligations.

70. Great American breached its obligations as set forth in the D&O Policy sold to Ottawa Bancshares when it committed the acts described and set forth above in Paragraphs 64 and 65.

71. As a direct and proximate result of these breaches, the Ottawa Policyholders have suffered damages and will continue to be damaged in excess of $75,000 arising from their costs and fees incurred and to be incurred in defending the MRI Demand and the MRI Lawsuit, together with the costs and disbursements of this action, including, but not limited to, reasonable attorney fees and costs, based on the D&O Policy and/or on K.S.A. 40-256, pre- and post-judgment interest, and other consequential damages, arising out of Great American's failure to honor its obligations under the terms of the D&O Policy.

## Count III
### Breach of Contract—Pre-Tender Defense Costs

72. Ottawa Bancshares incorporates all prior allegations in this Complaint as if set forth in full in Count III.

73. Among other things, the D&O Policy covers the defense costs incurred by the Ottawa Policyholders in the MRI Demand and in the MRI Lawsuit in excess of the retention.

74. Great American has wrongfully contended that it has no coverage obligations.

75. However, prior to rejecting coverage altogether, Great American wrongfully contended that the Ottawa Policyholders were not entitled to the defense costs incurred prior to Great American's approval of counsel.

76. Great American has refused to pay amounts incurred in excess of the retention, in part on the basis of Great American's wrongful denial of these covered pre-tender costs.

77. As a result, Great American has breached its obligations as set forth in the D&O Policy sold to Ottawa Bancshares when it committed the acts described and set forth above in Paragraphs 64 and 65.

78. As a direct and proximate result of these breaches, the Ottawa Policyholders have suffered damages and will continue to be damaged in excess of $75,000 arising from their costs and fees incurred in defending the MRI Demand and the MRI Lawsuit, together with the costs and disbursements of this action, including, but not limited to, reasonable attorney fees and costs, based on the D&O Policy and/or on K.S.A. 40-256, pre- and post-judgment interest, and other consequential damages, arising out of Great American's failure to honor its obligations under the terms of the D&O Policy.

### Count IV
### Bad Faith

79. Ottawa Bancshares incorporates all prior allegations in this Complaint as if set forth in full in Count IV.

80. Great American owes Ottawa Bancshares contractual and fiduciary duties of good faith and fair dealing, including the obligation to act faithfully, truthfully, without negligence, and with at least equal consideration for the interests of Ottawa Bancshares.

81. Great American has negligently, recklessly, and in bad faith, breached its obligations as set forth in the D&O Policy sold to Ottawa Bancshares when it committed the acts described and set forth above in Paragraphs 64 and 65.

82. For at least each of the reasons enumerated in the foregoing paragraph, Great American has rejected, repudiated, and breached its contractual and fiduciary obligations to Ottawa Bancshares.

83. As a direct and proximate result of these breaches, Ottawa Bancshares has been damaged in excess of $75,000 for all costs and fees incurred and to be incurred in defense of the MRI Demand and the MRI Lawsuit, together with the costs and disbursements of this action, including, but not limited to, reasonable attorney fees and costs, based on the D&O Policy and/or on K.S.A. 40-256, pre- and post-judgment interest, and other consequential damages arising out of Great American's failure to honor its obligations under the terms of the D&O Policy.

WHEREFORE, Ottawa Bancshares, Inc., prays for the Court to enter a judgment against Great American and in favor of Ottawa Bancshares:

    a. declaring Great American is obligated under the D&O Policy to pay for all costs incurred by Ottawa Bancshares in defense of the MRI Demand and the MRI Lawsuit in excess of the retention as well as any potential settlement or judgment;

    b. awarding Ottawa Bancshares its actual damages, including consequential damages, in an amount to be determined at or before trial;

    c. awarding Ottawa Bancshares all costs and fees associated with the initiation and prosecution of this action including, but not limited to, Ottawa Bancshares' attorney fees;

    d. awarding Ottawa Bancshares pre- and post-judgment interest; and

    e. granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

**GRAVES GARRETT LLC**

By: _/s/ Nathan F. Garrett_
Nathan F. Garrett, KS #24977
A. Bradley Bodamer, KS #11468
George R. Lewis, KS #28785
James A. Craig, KS #28201
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
ngarrett@gravesgarrett.com
bbodamer@gravesgarrett.com
glewis@gravesgarrett.com
acraig@gravesgarrett.com

Attorneys for Plaintiffs