

**GREAT AMERICAN SECURITY INSURANCE COMPANY**
**Directors & Officers Liability Policy**

EXHIBIT

A

exhibitsticker.com

PDDEC 10 (10 18)

# DIRECTORS & OFFICERS LIABILITY POLICY
## Declarations Page

IMPORTANT NOTICE:  This is a claims-made policy. **Defense Costs** are included within the Limit of Liability. Amounts incurred as **Defense Costs** will reduce the Limit of Liability available to pay judgments or settlements. Please read this **Policy** carefully.

**Item 1.**     **Named Insured(s):**              Ottawa Bancshares, Inc.; First Bank Kansas; First Kansas Bank; The Lyon County State Bank; Commercial Bank

              **Principal Office:**              235 South Santa Fe Ave., Salina, KS 67401

**Item 2.**     **Policy Period:**              From 12:01 a.m.  09/26/2021 To 12:01 a.m.  09/26/2024
              (Local time at the address shown in Item 1)

**Item 3a.**    **Total Policy Aggregate Limit:**  The Total Policy Limit for each **Policy Year** during the **Policy Period** for all Insuring Agreements, regardless of whether such Insuring Agreement is provided as a sublimit or separate limit, shall not exceed $23,000,000.

**Item 3b.**    **D&O Policy Limit:**              $6,000,000

**Item 4.**     **Extended Reporting Period:**  If the eligibility requirements are met and the Extended Reporting Period is properly exercised, the **Insured** shall pay 100% of the annual premium set forth in Item 11(a).  The length of the Extended Reporting Period shall be 365 days.

**Item 5.**     **Notices:**  All notices required to be given to the **Insurer** under this **Policy** shall be addressed to ABA Insurance Services Inc., 3401 Tuttle Road, Suite 300, Shaker Heights, Ohio 44122. Telephone: 800-274-5222.

**Item 6.**     **Defense Option:** It shall be the duty of the **Insured** and not the duty of the **Insurer** to defend **Claims** unless the "Insurer's Duty to Defend" is designated "yes" below:

| Insuring Agreement | Insurer's Duty To Defend |
|---|---|
| D&O Liability | No |
| Securities Liability | No |
| Broad Form Company Liability | No |
| Fiduciary Liability | No |
| Trust Services Liability | No |
| Employment Practices Liability | No |

**Item 7.**     **Coverage(s) Provided:** It is understood and agreed that coverage will not be provided under any Insuring Agreement unless a Limit of Liability and Retention for such Insuring Agreement are set forth below:

PDDEC 10 (10 18)

| Insuring Agreement | Item 8. "X" Indicates Separate Limit | Item 9. Limit of Liability | Item 10. Retention | Item 11. (a) Annual Premium | Item 11. (b) Actual Premium |
|---|---|---|---|---|---|
| **Directors & Officers Liability Coverage** | | | | | |
| (A) Insured Persons Liability & | | $6,000,000 | (A) $0 | | |
| (B) Company Indemnification | | $6,000,000 | (B) $75,000 | $16,327 | $44,083 |
| (C) Securities Liability | | $6,000,000 | (C) $75,000 | | |
| (with Shareholder Demand Investigative Coverage) | | | | | |
| | | | | | |
| **Additional Liability Coverages** | | | | | |
| Broad Form Company Liability (BFCL) | X | $6,000,000 | $75,000 | $12,246 | $33,064 |
| Fiduciary Liability | X | $1,000,000 | $5,000 | $604 | $1,631 |
| Trust Services Liability | X | $6,000,000 | $100,000 | $10,747 | $29,017 |
| Employment Practices Liability | X | $4,000,000 | $75,000 | $9,802 | $26,465 |

**Item 12.    IRA/Keogh Liability Retention:** If the **Insured** is legally obligated to pay for **Wrongful Acts** while acting solely in the capacity as administrator, custodian or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan) the Retention for such IRA/Keogh **Claim** shall be $5,000. This Retention shall only apply to the extent any such **Claim** involves an IRA or Keogh Plan not in the custody or control of any Trust Department or Trust **Subsidiary** of the **Company.**

**Item 13.    Prior/Pending Proceeding Dates:**

| Insuring Agreement | Prior/Pending Proceeding Date |
|---|---|
| D&O Liability | 09/26/2012 |
| Securities Liability | 09/26/2012 |
| Broad Form Company Liability | 09/26/2012 |
| Fiduciary Liability | 09/26/2012 |
| Trust Services Liability | 09/26/2012 |
| Employment Practices Liability | 09/26/2012 |

**Item 14.    Endorsements:**  This **Policy** is subject to the terms of the following Endorsements attached hereto and incorporated herein by reference at the effective date of this **Policy** and to all other Endorsements attached hereto after the effective date of this **Policy**:
PD 1000 (10 18), PD 1120 (10 18), PD 1150 (10 18), PD 1160 (10 18), PD 1165 (10 18), PD 1170 (10 18), PD 1175 (10 18), PD 2005 (10 18), PD 2006 (10 18), PD 2035 (10 18), PD 3250 (10 18), PD 3283 (10 18), PD 4021 E (10 18), PD 4070 (10 18), PD 4130 (10 18), PD 4170 (10 18), PD 4220 (10 18), PD 4230 (10 18), PD 4310 (10 18), PD 4317 WE (10 18), PD 4321 (10 18), PD 4335 (10 18), PD 4340 (10 18), PD 4350 (10 18), PD 4430 (10 18), PD 4500-MR (10 18), PD 8111 (10 18), PD 9999 (10 18), PD 8000 KS (10 18)

PDDEC 10 (10 18)

These Declarations, along with the completed and signed **Application**, including attachments, the **Policy** and all Endorsements hereto, shall constitute the contract between the **Insured** and GREAT AMERICAN SECURITY INSURANCE COMPANY, 301 E. 4th Street, Cincinnati OH 45202.

Date: <u>October 1, 2021</u>

_John N. Well_

Company Officer or Authorized Representative

PD 1000 (10 18)

## DIRECTORS & OFFICERS LIABILITY POLICY

---

**IMPORTANT NOTICE: THIS POLICY'S INSURING AGREEMENTS PROVIDE COVERAGE ON A CLAIMS MADE BASIS AND APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENSION PERIOD (IF APPLICABLE) AND REPORTED TO THE INSURER IN ACCORDANCE WITH THE TERMS OF THIS POLICY. DEFENSE COSTS ARE INCLUDED WITHIN THE LIMIT OF LIABILITY. DEFENSE COSTS WILL REDUCE THE AVAILABLE LIMIT OF LIABILITY AND ARE SUBJECT TO RETENTIONS.**

---

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the insurance company shown in the Declarations (a stock insurance company, hereinafter called the **Insurer**), including the statements made in the **Application** and any attachments thereto, and subject to all terms, conditions and limitations of this **Policy**, the **Insured** and **Insurer** agree:

## SECTION I - INSURING AGREEMENTS

It is understood and agreed that coverage will not be provided under any Insuring Agreement unless a Limit of Liability, Retention, and premium for such Insuring Agreement are set forth in the Declarations.

A.   **INSURED PERSONS LIABILITY INSURING AGREEMENT** - The **Insurer** will pay on behalf of the **Insured Persons**, **Loss** resulting from a **Claim** first made during the **Policy Period** or the Extended Reporting Period against the **Insured Persons** for **Wrongful Acts** for which the **Insured Persons** are legally obligated to pay, except for **Loss** the **Company** pays as indemnification.

B.   **COMPANY INDEMNIFICATION INSURING AGREEMENT** - The **Insurer** will pay on behalf of the **Company**, **Loss** resulting from a **Claim** first made during the **Policy Period** or the Extended Reporting Period against the **Insured Persons** for **Wrongful Acts** for which the **Company** has agreed to or is legally permitted or required by law to indemnify the **Insured Persons**.

C.   **SECURITIES LIABILITY INSURING AGREEMENT** - If a Limit of Liability for Securities Liability Coverage is written in Item 9 of the Declarations, the **Insurer** will pay on behalf of the **Company**, **Loss** resulting from a **Securities Claim** first made during the **Policy Period** or the Extended Reporting Period against the **Company** for which the **Company** is legally obligated to pay.

D.   **SHAREHOLDER DEMAND INVESTIGATIVE INSURING AGREEMENT** - If a Limit of Liability for Securities Liability Coverage is written in Item 9 of the Declarations, the **Insurer** will indemnify the **Company** for:

(1)   **Investigative Costs** resulting from a **Special Committee Inquiry Demand**; and
(2)   **Books and Records Costs** resulting from a **Books and Records Request**.

This Sublimit of Liability for the Shareholder Demand Investigative Insuring Agreement shall be $250,000. Such Sublimit shall be part of, and not in addition to, the Securities Liability Coverage Limit of Liability set forth in Item 9 of the Declarations. No Retention shall apply to the Shareholder Demand Investigative Insuring Agreement.

Coverage, subject to all other terms and conditions of the **Policy**, will be extended for Subsection (2)

PD 1000 (10 18)

above whether or not a **Wrongful Act** is alleged.

## SECTION II - ADDITIONAL COVERAGES

A.   **ESTATES, HEIRS AND MARITAL ESTATE LIABILITY -** This **Policy** shall cover **Loss** resulting from **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(1)   the estates, heirs, legal representatives or assigns of any **Insured Persons** who are deceased, incompetent, insolvent or bankrupt, provided that such **Claims** would have been covered by this **Policy** in the absence of such death, incompetency, insolvency or bankruptcy; and

(2)   the lawful spouse or **Domestic Partner** of an **Insured Person** solely by reason of such person's status as a spouse or **Domestic Partner**, or such spouse or **Domestic Partner's** ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**.

The coverage provided by this Subsection shall not apply with respect to any loss arising from any act or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or **Domestic Partner.**

B.   **NOT-FOR-PROFIT DIRECTORSHIPS -** This **Policy** shall cover **Loss** resulting from **Claims** for **Wrongful Acts** committed by **Insured Persons** while serving on the board of directors, board of trustees, or as officers of any not-for-profit entity at the direction of the **Company**; provided, however, that this coverage shall be excess over any other insurance or indemnification provided to the **Insured Persons**.

## SECTION III - EXTENDED REPORTING PERIOD

A.   If the **Company** or the **Insurer** cancels or non-renews this **Policy** or any Insuring Agreement, or if the **Policy** terminates subject to Section XII (C)(1), the **Insured** shall have the right to purchase an optional extended reporting period (herein called the Extended Reporting Period) for the period set forth in Item 4 of the Declarations. It is understood that if the **Insurer** cancels this **Policy** due to nonpayment of premium, the **Insured** shall not be entitled to the Extended Reporting Period.

B.   The Extended Reporting Period is not an extension of coverage, but rather an extended reporting period for **Claims** first made during the Extended Reporting Period resulting from **Wrongful Acts** that occurred prior to the effective date of cancellation, nonrenewal or termination and otherwise covered under this **Policy**. Notice of facts and circumstances that may give rise to a **Claim**, pursuant to Section X (B), must be given during the **Policy Period** and shall not be effective if given during the Extended Reporting Period.

C.   If the **Insured** elects to purchase the Extended Reporting Period, the premium will be calculated by multiplying the annual premium set forth in Item 11(a) of the Declarations by the percentage set forth in Item 4 of the Declarations. The Extended Reporting Period is non-cancellable and the entire premium shall be deemed fully earned at its commencement.

D.   The **Insureds'** right to purchase the Extended Reporting Period shall lapse unless the **Insurer** receives written notice of the **Insureds'** election and full payment of the additional premium due within sixty (60) days after the effective date of such cancellation, nonrenewal or termination.

PD 1000 (10 18)

E.      The Limit of Liability with respect to **Claims** made during the Extended Reporting Period shall be part of and not in addition to the Limit of Liability set forth in Item 9 of the Declarations, for each respective Insuring Agreement, for all **Claims** made during the immediately preceding **Policy Year**. Any **Claim** made during the Extended Reporting Period shall be deemed to be made during the **Policy Year** immediately preceding the Extended Reporting Period.

F.      The offer by the **Insurer** and acceptance by the **Insured** of continued coverage under terms, conditions, Limits of Liability, Retentions, or premiums different from those applicable to the expiring **Policy** shall not constitute a refusal to renew and shall not entitle any **Insured** to exercise the Extended Reporting Period.

## <u>SECTION IV - DEFINITIONS</u>

<u>Application</u> means:

(1)     all signed applications for the procurement of this **Policy** and any attachments or other materials submitted to the **Insurer** in support of the procurement of this **Policy**;

(2)     any publicly available information published or filed by or with a recognized source, agency or institution regarding the **Insured** in the twelve (12) months preceding the **Policy's** inception, and any amendments thereto, whether or not submitted with any signed application; and

(3)     if applicable, any representation or warranty provided to the **Insurer** within the past three (3) years in connection with any policy of which this **Policy** is a renewal or replacement.

The **Application** is deemed to be attached to and incorporated into this **Policy**, as if physically attached.

<u>Books and Records Costs</u> means any reasonable costs, charges and fees incurred by the **Company** in response to a **Books and Records Request**, such fees, costs and charges not to include regular or overtime wages, salaries or fees of **Insured Persons**.

<u>Books and Records Request</u> means any written demand first made upon the Board of Directors of the **Company** during the **Policy Period** or Extended Reporting Period (if applicable) by or on behalf of a shareholder of the **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or other similar statute.

<u>Brokerage/Advisory Services</u> means the purchase or sale of mutual funds, annuities, variable annuities, or life, accident or health insurance or securities as defined in Section 202(18) of the Investment Advisers Act of 1940, as amended, transacted through an **Employee,** or a third-party service provider pursuant to a contract between the **Company** and the service provider. In connection with the foregoing activities, Brokerage/Advisory Services also includes the provision of:

(1)     economic advice, financial advice, or investment advisory services; or

(2)     financial planning advice including, without limitation, any of the following activities in conjunction therewith: the preparation of financial plans or personal financial statements, or the giving of advice with regard to insurance, savings, investments, retirement planning, or taxes.

**Brokerage/Advisory Services** shall not include rendering advice with regard to the FDIC-insured component of any deposit account or the sale of credit life or disability insurance incidental to the issuance of a loan.

**Claim**, either in singular or plural, means any of the following instituted against an **Insured Person** or against the **Company**, but only to the extent coverage is granted to the **Company**:

(1)  a written demand, other than a **Special Committee Inquiry Demand** or a **Books and Records Request**, for monetary damages or non-monetary relief that is received during the **Policy Period** or, if applicable, Extended Reporting Period, by an **Insured Person** or the **Company** (but only to the extent coverage is granted to the **Company**);

(2)  a civil proceeding commenced by the service of a complaint or similar pleading;

(3)  a criminal proceeding commenced by a return of an indictment;

(4)  an arbitration or mediation proceeding in which monetary damages are sought;

(5)  a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, a formal investigative order, or similar document;

(6)  with respect to Insuring Agreement D only, a **Special Committee Inquiry Demand** or a **Books and Records Request**, that is received during the **Policy Period** or, if applicable, Extended Reporting Period; or

(7)  a written request to toll or waive a statute of limitations, relating to a potential **Claim** described in Subsections (1) through (6) above, that is received and reported during the **Policy Period** or, if applicable, Extended Reporting Period, by an **Insured Person** or the **Company** (but only to the extent coverage is granted to the **Company**)

for a **Wrongful Act**, including any appeals from such proceedings.

**Cloud** means a remote server that is hosted on the Internet and that:

(1)  is used for storage or computer processing by the **Company**;

(2)  the **Company** directly pays for; and

(3)  is owned by a company with which the **Company** has entered into a direct service-level agreement.

**Company** means the entity or entities set forth in Item 1 of the Declarations, any **Subsidiary** created or acquired as of the inception date set forth in Item 2 of the Declarations, and, subject to Section XI (B), any bank **Subsidiary** created or acquired during the **Policy Period.**

**Computer Programs** mean a set of related electronic instructions that direct the operations and functions of a computer or devices connected to it and that enable the computer or devices to receive, process, store, or send **Electronic Data**.

**Computer System** means:

(1)  any computer with related peripheral components;

(2)  any electronic processing, storage or communication device;

(3)  any network or operating system; and

(4)  any tablet or smart phone

by which **Electronic Data** is electronically collected, transmitted, processed, stored, and retrieved.  **Computer System** includes transmissions of the **Company**'s **Electronic Data** to and from a **Cloud**.

**Confidential Information** means:

(1)     any nonpublic personal information that allows an individual to be distinctively identified, including a social security number, driver's license, or state identification number;
(2)     a **Customer**'s credit or debit card numbers, PINs, passwords or other account numbers; and
(3)     any financial or commercial information that is subject to the terms of a confidentiality agreement agreed to by the **Insured**.

**Customer** means any natural person or entity that receives professional services directly from the **Company**.

**Cyber Banking Services** means any service rendered by the **Insured** through the transmission of **Electronic Data** to or from the **Insured**'s secured and authenticated **Secured Portal**.

**Cyber Publishing and Social Networking Activities** means the electronic display or electronic dissemination of information through the **Company's** website or **Social Networking** account.

**Defense Costs** means reasonable and necessary fees, costs, charges, expenses, including attorneys' fees, experts' fees, mediators' fees, arbitrators' fees, e-discovery consultants' fees, e-discovery costs, and premiums for an appeal bond or similar bond, incurred by or on behalf of an **Insured** with the **Insurer's** prior written consent in investigating or defending any covered **Claim**.  **Defense Costs** shall not include salaries, wages, overtime, overhead, or benefit expenses incurred by the **Insured**.

**Director or Officer** means any natural person who is a past, present or future director, management committee member, audit committee member, supervisory board member, management board member, or trustee of the **Company** or an officer of the **Company** elected or appointed by the **Company's** board of directors at a duly held board meeting**.**

**Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law or under the provisions of any formal program established by the **Company**.

**Electronic Data** means facts or information converted to a form usable in a **Computer System** by **Computer Programs** and stored on magnetic tapes or disks, optical storage disks, or other bulk media.

**Electronic Funds Transfer Act** means the transfer of funds from a **Customer's** account through a **Computer System** operated by the **Company**.

**Employee**, either in singular or plural, means any natural person whose labor or service is or was engaged and directed by the **Company** including any:  1) past, present, future, part-time, seasonal or temporary employees; and 2) volunteers and interns acting in the capacity of an **Employee**.  **Employee** also includes **Leased Employees** but does not include **Independent Contractors.**

**ERISA** means the Employment Retirement Income Security Act of 1974, as amended.

PD 1000 (10 18)

**Executive Officer** means the Chairman of the Board, Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Director, In-house Counsel, Controller, Internal Auditor, Risk Manager, Senior Loan Officer or President, of the **Company** or any person holding any equivalent position within the **Company**.

**Financial Impairment** means the **Company** becoming a debtor in possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company** or any **Subsidiary**.

**Independent Contractor** means any natural person who is not an **Employee** or a **Leased Employee** but performs labor or service for the **Company** pursuant to a written contract or agreement.

**Insurance Services** means any of the following services performed by an **Insured** as insurance agent, insurance broker, insurance consultant or insurance managing general agent:

(1)     sale and placement of insurance;
(2)     identification, analysis and evaluation of a client's insurance needs, including work performed for prospective clients;
(3)     appraisal of property and inspections for insurance purposes;
(4)     adjustment of claims on behalf of insurance companies, including loss payments; or
(5)     arrangement of premium financing for clients.

**Insured**, either in singular or plural, means the **Insured Persons** or the **Company**, if coverage for the **Company** is set forth by Insuring Agreement made part of this **Policy**.

**Insured Person**, either in singular or plural, means any natural person who was, now is or shall become an **Employee**, director, officer, member of the board of trustees, governor, advisory or honorary director, or advisory or honorary member of the board of trustees of the **Company** while acting in his or her capacity as such.

**Interrelated Wrongful Acts** means any **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

**Investigative Costs** means reasonable and necessary fees (including attorney's fees and expert's fees) and expenses (other than wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) in investigating or evaluating on behalf of the **Company** whether it is in the best interest of the **Company** to prosecute the claims alleged in a **Special Committee Inquiry Demand**.

**Leased Employee** means any natural person who is leased to the **Company** by a labor leasing firm under an agreement between the **Company** and the labor leasing firm to perform work for the **Company** and for whom the **Company** controls the means and manner of the work performed. But any coverage afforded under this **Policy** to a **Leased Employee** applies only to the extent that the **Company** indemnifies such **Leased Employee**, and any such coverage will be specifically excess of any other indemnity and insurance otherwise available to such **Leased Employee**.

**Loan Servicing** means the servicing of any loan, lease or extension of credit (not including financing for investment banking or leveraged or management buy-outs). **Loan Servicing** includes the following servicing

activities: record keeping, billing and disbursements of principal and interest, receipt or payment of insurance premiums and taxes, credit reporting or statements of a customer's credit worthiness, or the determination of the depreciation amount of property (but not projections of or an appraisal for residual or future value of property).

**Loan Servicing** does not include the purchase, acquisition or sale of any loan, lease or extension of credit, any act of restructure, termination, transfer, or repossession or foreclosure of any loan, lease or extension of credit.

<u>Loss</u> means **Investigative Costs**, **Books and Records Costs, Defense Costs,** and any amounts which the **Insured** is legally obligated to pay resulting from a **Claim,** including damages, judgments, settlements, and pre- and post-judgment interest.  **Loss** shall also include punitive or exemplary damages and the multiple portion of any multiplied damage award to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has an adequate relationship to the relevant **Insured**.  **Loss** shall not include:

(1)    taxes, or any amount that the **Company** is obligated to pay to any taxing authority;

(2)    criminal or civil fines or penalties imposed by law;

(3)    any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any customer or any forgiveness of debt, including any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit that has been sold;

(4)    costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, rules or similar legal authority, or in complying with any other federal, state or local laws, rules or similar legal authority;

(5)    any amounts incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of hazardous materials;

(6)    any amounts the **Company** is obligated to pay or has paid pursuant to any written or oral contract or agreement.

(7)    arising out of or in any way involving the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures, but only to the extent that such investment product's depreciation (or failure to appreciate) is due to market fluctuation;

(8)    any restitution or disgorgement, or the payment of **Loss** (other than **Defense Costs**) which is attributable to restitution or disgorgement, or similar payments arising out of, or relating to, restitution or disgorgement, including but not limited to the return of fees, commissions or charges for the **Company's** services; or

(9)    any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

<u>Loss Information</u> means information on open, closed and potential **Claims, Special Committee Inquiry Demands** or **Books and Records Requests**, including date, description, and payment amounts, if any.

<u>Named Insured</u> means the first named entity set forth in Item 1 of the Declarations.

PD 1000 (10 18)

**Policy** means collectively, the Declarations, the **Application**, this policy form and any Endorsements attached hereto.

**Policy Period** means the period from 12:01 A.M on the inception date set forth in Item 2 of the Declarations to 12:01 AM on the expiration date set forth in Item 2 of the Declarations or any earlier termination date. In no event will the **Policy Period** continue past the effective date of cancellation or termination of this **Policy**.

**Policy Year** means the period of one year following the effective date and hour of this **Policy** or any anniversary thereof, or if the time between the effective date and termination of the **Policy Period** is less than one year, such lesser period.  Any extension of the **Policy Period** shall not result in an increase or reinstatement of the Limit of Liability. If the **Policy Period** is extended beyond its original expiration date, the period of the extension shall be a part of the **Policy Year**, which would have ended on the original expiration date.

**Pollutants** include, but are not limited to, any solid, liquid, gaseous or thermal organism, irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, nuclear materials, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Privacy and Security Act** means the management, oversight, or preservation of **Confidential Information** or the security of the **Company's Computer System**.

**Secured Portal** means the **Company's**:

(1)     website;
(2)     internet or mobile banking applications; or
(3)     private, internal network.

A **Secured Portal** does not include any emails, email systems, telefacsimile devices, or any voice or voice-recording system.

**Securities Claim** means a **Claim,** other than a **Special Committee Inquiry Demand** or a **Books and Records Request**:

(1)     against an **Insured** for a violation of any securities law, but solely in connection with the securities of the **Company**;
(2)     against an **Insured** for a common law cause of action, pled in tandem with, or in lieu of, any securities law violation described in Subsection (1) above and brought by:

     a.     a security holder of the **Company** with respect to his interest in the securities of the **Company,** brought directly or derivatively; or
     b.     any person or entity in connection with the purchase, sale or offer to purchase to sell securities of the **Company**; or

(3)     brought by or on behalf of the **Company** seeking a motion to dismiss a derivative action.

**Social Networking** means the **Company**'s official profile or any account on an internet-based venue owned by a third-party entity that allows its users to disseminate information electronically to other venue participants, and facilitates and encourages comments and dialogue.

PD 1000 (10 18)

**Special Committee Inquiry Demand** means a written demand first made upon the Board of Directors or Board of Trustees of the **Company** during the **Policy Period** or Extended Reporting Period (if applicable), by one or more security holders of the **Company**, without the solicitation, assistance or active participation of any **Insured Person**, to bring a civil proceeding in a court of law on behalf of the **Company** against any **Insured Person** for a **Wrongful Act**.

**Subsidiary** means:

(1)     any entity in which the **Company** owns more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors;

(2)     any limited liability company in which the **Company** has the right to appoint or designate fifty percent (50%) or more of such limited liability company's managers; or

(3)     any joint venture in which the **Company** has the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors, trustees or other equivalent executives.

**Trust Services** means any of the following services performed by the **Insured**:

(1)     executor, administrator or personal representative of estates, administrator of guardianships, trustee under personal or corporate trust agreements, or conservator of any person;

(2)     administrator, custodian, or trustee under any individual retirement account (IRA), H.R. 10 Plan (Keogh Plan), 401k, pension, profit sharing, health and welfare or any other employee benefit plan or trust, other than an employee benefit plan or trust sponsored or established by the **Company** for its own **Employees**;

(3)     custodian, depository or managing agent for securities or real property, manager of any personal property owned by others, attorney-in-fact, interest or dividend disbursing agent, transfer or paying agent, redemption or subscriptions agent, fiscal agent, tax withholding agent, registrar of securities, agent for voting securities, sinking fund agent, escrow agent or trustee under a corporate, municipal or local taxing district bond indenture; or

(4)     trustee exercising any other trust or fiduciary powers permitted by law.

**Wrongful Act**, either in singular or plural, means any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by:

(1)     any **Insured Person** in the discharge of their duties while acting solely in the capacity as such;

(2)     any **Insured Person** while acting solely in the capacity as director, officer, or member of the board of trustees of a not-for-profit entity pursuant to Section II (B); or

(3)     the **Company**, but only to the extent that coverage is granted to the **Company** by an Insuring Agreement made a part of this **Policy**.

PD 1000 (10 18)

# SECTION V - EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

The following Exclusions are applicable to all **Insureds** under all Insuring Agreements made a part of this **Policy**.

**Bodily/Personal Injury and Property Damage Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury, sickness, disease, or death of any person, damage to or destruction of any tangible or intangible property including loss of use and diminution thereof, wrongful entry, slander of title, eviction, false arrest, false imprisonment, malicious prosecution, abuse of process, assault, battery, mental anguish, emotional distress, harassment, loss of consortium, invasion of privacy, defamation, false light, libel, or slander.

**Brokerage/Advisory Services Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the rendering or failing to render **Brokerage/Advisory Services.** However, this Exclusion shall not apply:

(1) if this **Policy** includes the Broad Form Company Liability Endorsement;
(2) if this **Policy** includes the Bankers Professional Liability Endorsement or the Broad Form Bankers Professional Liability Endorsement;
(3) to **Securities Claims**.

**Contract Exclusion** –The **Insurer** shall not be liable to make any payment for:

(1) **Loss** in connection with any **Claim** arising out of or in any way involving the assumption of any liability to defend, indemnify, or hold harmless any person or entity, other than an **Insured Person**, under any written contract or agreement, unless such liability would be imposed regardless of the existence of such contract or agreement; or
(2) **Loss**, other than **Defense Costs**, for the intentional breach, in fact, of any written or oral contract or contractual duty, or amounts the **Company** is obligated to pay pursuant to any written or oral contract.

**Cyber Cover Exclusion** – The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

(1) **Cyber Banking Services**;
(2) **Electronic Funds Transfer Acts**;
(3) **Privacy and Security Acts**;
(4) **Cyber Publishing and Social Networking Activities**; or
(5) an **Insured**'s development of websites or software, an **Insured**'s provision of hosting or network security services, or an **Insured** acting as an internet service provider, internet access provider, application service provider, or provider of like services to third parties.

However, this Exclusion shall not apply to **Securities Claims**.

**Employment Practices Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving actual or alleged:

(1) wrongful termination, employment-related discrimination or employment-related harassment;

PD 1000 (10 18)

(2)    employment-related misrepresentation or employment-related retaliation, humiliation, wrongful failure to employ or promote, wrongful deprivation of career opportunity, wrongful demotion, negligent evaluation, negligent hiring, negligent retention, wrongful discipline; or

(3)    any other violation of any statutory or common law relating to employment.

**ERISA Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any pension, profit sharing or employee benefit program established in whole or in part for the benefit of **Employees** of the **Company**, including without limitation, any violation of **ERISA** or similar provisions of any federal, state or local statutory law, common law or rule or any administrative rule or law. However, this Exclusion shall not apply to **Securities Claims**.

**Fee Dispute Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving disputes over fees, commissions, or charges for the **Company's** services.

**Foreclosed Property Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the ownership, sale, operation, management or control of any entity or property acquired by the **Company** as security or collateral for any loan, lease or extension of credit.

The Foreclosed Property Exclusion shall not apply to **Claims** in connection with the ownership, sale, operation, management or control of any one to four family residential property.

**Fraud/Violation of Law Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs,** in connection with any **Claim** arising out of or in any way involving any fraudulent, dishonest or criminal act or any willful violation of any civil or criminal statute, regulation or law by the **Insured**, provided a final non-appealable adjudication establishes such fraudulent, dishonest, or criminal act or such willful violation of statute, regulation or law.

**Illegal Profit/Payment Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving:

(1)    conflicts of interest, engaging in self-dealing, or acting in bad faith; or

(2)    payment by the **Company** of inadequate or excessive consideration in connection with its purchase of **Company** securities; or

(3)    any **Insured** gaining any profit, remuneration, or financial advantage to which the **Insured** was not legally entitled, provided a final, non-appealable adjudication establishes the Insured gained profit, remuneration or financial advantage to which the **Insured** was not legally entitled.

**Insolvency Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the insolvency, conservatorship, receivership, liquidation of, bankruptcy of or suspension of payment by any person or entity; provided, however, this Exclusion shall not apply to:

(1)    **Financial Impairment**;

(2)    the **Insured's** investment on behalf of a customer in the stock of any such entity or entities;

(3)    the **Insured's** extension of credit, an agreement or refusal to extend credit, the servicing of any loan, lease or extension of credit (not including financing for investment banking, or leveraged or management buy-outs), or the collection or restructuring of any extension of credit;

PD 1000 (10 18)

(4)    the Employment Practices Liability Insuring Agreement, if so attached to this **Policy**; and

(5)    the Fiduciary Liability Insuring Agreement, if so attached to this **Policy**.

**Insurance Services Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the rendering or failing to render **Insurance Services** (other than **Insurance Services** relating to credit life or disability insurance incidental to the issuance of a loan). However, this Exclusion shall not apply:

(1) if this **Policy** includes the Broad Form Company Liability Endorsement;

(2) if this **Policy** includes the Bankers Professional Liability Endorsement or the Broad Form Bankers Professional Liability Endorsement; or

(3) to **Securities Claims**.

**Insured vs. Insured Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** by, on behalf of, or at the behest of the **Company**, any affiliate of the **Company** or any **Insured Person** in any capacity except where such **Claim** is brought and maintained:

(1)    in the form of a cross-claim or third-party claim for contribution or indemnity that is part of and results directly from a **Claim** that is not otherwise excluded by the terms of the **Policy**;

(2)    by an **Insured Person** solely as a customer of the **Company**; provided such **Claim** is brought independently of, and totally without the direct or indirect solicitation, assistance, participation, or intervention of any other **Insured**; or

(3)    by a security holder of the **Company** as a derivative action on behalf of the **Company** or such affiliate; provided such **Claim** is brought independently of, and totally without the direct or indirect solicitation, assistance, participation, or intervention of any **Insured** or any affiliate of the **Company** unless such participation arises solely out of the activities for which Section 806 of the Sarbanes-Oxley Act of 2002, or similar "whistle blower" protection provision of an applicable federal, state, or local securities law affords protection to such **Insured**;

(4)    by an **Insured Person** who has not been an **Employee**, director, officer, member of the board of trustees, honorary or advisory director or advisory member of the board of trustees of the **Company** for four (4) years prior to the inception date of the **Policy**; or

(5)    by the FDIC or other governmental authority regulating the **Company** or any other party acting as receiver, conservator, liquidator, rehabilitator, or trustee of the **Company** or acting in a similar capacity.

**Investment Banking/Securities Underwriting Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged:

(1)    underwriting, syndicating or promoting any security (except loan syndications or equity or debt securities issued by the **Company**);

(2)    rendering of advice or recommendations regarding any actual or attempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, bankruptcy, reorganization, restructuring, recapitalization, spin-off, offering of securities, dissolution or sale of all or substantially all of the assets or stock of an entity;

(3)    rendering of any fairness opinion;

(4)    proprietary trading;

(5)    any acquisition or sale of securities of the **Company** for its own account; or

(6)    any other investment banking activity,

PD 1000 (10 18)

including any disclosure requirements in connection with any of the foregoing activities.

**IRA/Keogh Exclusion** – The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the **Company** while acting solely in the capacity as administrator, custodian, or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan) outside of the scope of any Trust Department or Trust **Subsidiary** of the **Company.** If this **Policy** includes the Broad Form Company Liability Endorsement, the Bankers Professional Liability Endorsement or the Broad Form Bankers Professional Liability Endorsement, this Exclusion shall not apply.

**Non-Subsidiary Wrongful Acts Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** against any **Subsidiary**, or any **Employee**, **Director or Officer**, or **Executive Officer** of such **Subsidiary**, for any **Wrongful Act** or **Interrelated Wrongful Acts** actually or allegedly committed in whole or in part during any time when the entity was not a **Subsidiary**.

**Pollution Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

(1)   the actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of **Pollutants**; or
(2)   any direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or to pay for or contribute to the costs of undertaking such actions.

This Exclusion shall not apply to **Claims** covered under Insuring Agreement A.

**Prior and Pending Proceeding Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any demand, claim, suit, or other proceeding against any **Insured** initiated prior to the date set forth in Item 13 of the Declarations, or arising out of or in any way involving the same or substantially the same fact, circumstance or situation underlying or alleged in such prior demand, claim, suit or other proceeding.

**Prior Notice Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any **Wrongful Act** or any **Wrongful Act** which is part of any **Interrelated Wrongful Acts**, or any fact, circumstance or situation, which has been the subject of any notice or attempted notice given to any carrier other than the **Insurer** under any similar insurance policy providing protection for any **Insured**.

**Receivership Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the **Company's** function or activity as receiver, trustee in bankruptcy, or assignee for the benefit of creditors.

**Short-Swing Profit Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving an accounting of profits made from the purchase or sale of **Company** securities by the **Insured Persons** within the meaning of Section 16(b) of the Securities Exchange Act of 1934, as amended, or similar provisions of any state statutory law or common law.

**Trust Services Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the rendering or failing to render **Trust Services.** However, this Exclusion shall not apply to **Securities Claims**.

PD 1000 (10 18)

## SECTION VI - LIMIT OF LIABILITY, RETENTION AND INDEMNIFICATION

A.   **LIMITS OF LIABILITY**

(1)   The **Insurer's** maximum Limit of Liability under this **Policy** for all Insuring Agreements combined shall not exceed the Total Policy Aggregate Limit set forth in Item 3a. of the Declarations regardless of whether such Insuring Agreement is provided as a sublimit or a separate limit. Amounts incurred as **Defense Costs** will reduce and shall be part of and not in addition to the Total Policy Aggregate Limit.

(2)   If a Separate Limit of Liability is not specified in Item 8 of the Declarations for an individual Insuring Agreement, the **Insurer's** maximum Limit of Liability for each Insuring Agreement for all **Loss** resulting from all **Claims** first made for each **Policy Year** during the **Policy Period** shall be the amount set forth in Item 9 of the Declarations for such Insuring Agreement, and this amount shall be a part of and not in addition to the D&O Policy Limit set forth in Item 3b. of the Declarations.

(3)   If a Separate Limit of Liability is specified in Item 8 of the Declarations for any Insuring Agreement, the **Insurer's** maximum Limit of Liability for each Insuring Agreement for all **Loss** resulting from all **Claims** first made for each **Policy Year** during the **Policy Period** shall be the amount set forth in Item 9 of the Declarations for such Insuring Agreement. However, payment of such **Loss** will not erode the Limit of Liability set forth in Item 9 of the Declarations for any other Insuring Agreement.

B.   **RETENTION AND INDEMNIFICATION**

(1)   **Defense Costs** will be applied against the Retention.  The **Insurer** shall only pay for covered **Loss**, including covered **Defense Costs**, in excess of the applicable Retention for each **Claim** as set forth in Item 10 of the Declarations. No Retention shall apply to **Loss** incurred by the **Insured Persons** for which the **Company** is:

   (a)   neither permitted nor required by law to advance **Defense Costs** or indemnify the **Insured Persons**; or

   (b)   permitted or required to advance **Defense Costs** or indemnify the **Insured Persons** but does not do so by reason of **Financial Impairment**.

(2)   If the **Company** is legally permitted or required to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss**, regardless of whether actual indemnification or advancement is granted, the Retention applicable to Insuring Agreement B (Company Indemnification Coverage) shall apply to such **Loss**, unless the **Company**, solely by reason of its **Financial Impairment**, does not make indemnification or advancement.

(3)   One Retention shall apply to covered **Loss** resulting from each **Claim**. If **Loss** from a **Claim** is covered under more than one Insuring Agreement, the **Claim** shall be subject to the highest applicable Retention.

PD 1000 (10 18)

(4)    Except for the payment of **Defense Costs**, the **Insurer** shall pay or reimburse one hundred percent (100%) of covered **Loss**, in excess of the applicable Retention, upon final disposition of the **Claim**.

C.    **SINGLE CLAIM - Claims** based upon or arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** committed by one or more **Insureds** shall be considered a single **Claim**, and only one Retention and Limit of Liability shall apply to such single **Claim**. Each such single **Claim** shall be deemed to be first made on the date the earliest of such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**.


## SECTION VII - NON-EROSION OF INSURING AGREEMENT A AND ORDER OF PAYMENTS

A.    **NON-EROSION OF INSURING AGREEMENT A**

(1)    If the Limit of Liability for any Insuring Agreement extending coverage to the **Company** is a sublimit of the D&O Policy Limit, the Limit of Liability applicable to Insuring Agreement A (Insured Persons Liability Coverage) shall not be reduced by the payment of **Loss** resulting from **Claims** covered by such Insuring Agreement.  If a separate Limit of Liability is set forth in Item 8 of the Declarations this provision shall not apply.

(2)    If the **Company** is legally permitted or required to advance **Defense Costs** or indemnify **Insured Persons** for **Loss**, such **Loss** shall be deemed to occur under Insuring Agreement B (Company Indemnification Coverage) regardless of whether actual indemnification is granted.


B.    **ORDER OF PAYMENTS** - In the event one or more **Claims** result in a potential or actual **Loss** which, in aggregate, in the **Insurer's** judgment could reasonably exceed the D&O Policy Limit set forth in Item 3b. of the Declarations, then:

(1)    the **Insurer** shall pay first for such **Loss** for which coverage is provided under Insuring Agreement A (Insured Persons Liability Coverage); then

(2)    with respect to whatever remaining amount of the Limit of Liability is available after payment of such **Loss**, the **Insurer** shall pay such **Loss** for which coverage is provided under Insuring Agreement B (Company Indemnification Coverage); then

(3)    pay such **Loss** for which coverage is provided to the **Company** under any Insuring Agreement extending coverage to the **Company**.


The **Financial Impairment** of the **Company** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **Policy** pursuant to this Subsection.

## SECTION VIII - DEFENSE AND SETTLEMENT

A.   **NO DUTY TO DEFEND**

(1)   Amounts incurred as covered **Defense Costs** will reduce and shall be part of, and not in addition to, the applicable Limit of Liability. It shall be the duty of the **Insured** and not the duty of the **Insurer** to defend **Claims**. The **Insured** shall only retain counsel approved in writing by the **Insurer**, whose consent for which shall not be unreasonably withheld.

(2)   The **Insured** shall not incur **Defense Costs**, admit liability for, settle, or offer to settle any **Claim** without the **Insurer's** prior written consent, which shall not be unreasonably withheld. The **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.  The **Insurer** shall not be liable for any **Loss**, including **Defense Costs**, for any settlement, admission, voluntary payment, assumed obligation, or confessed or agreed damages or judgment to which it has not consented in writing.

(3)   The **Insurer** shall have the right but not the duty to associate with the **Insured** in the settlement and defense of any **Claim** that appears reasonably likely to involve the **Insurer**. Such association shall include, but not be limited to, participation in the formation of litigation strategy, review of pleadings and other pertinent papers prior to filing, and participation in the settlement negotiations.

B.   **ADVANCEMENT OF DEFENSE COSTS**

(1)   Subject to Section IX, the **Insurer**, if requested by the **Insured**, shall advance covered **Defense Costs** on a current basis, except when advancement of **Defense Costs** is prohibited by law or regulation.

(2)   Prior to advancing or indemnifying **Defense Costs**, the **Insurer** shall be entitled to sufficient information and documentation as to the amount and purpose of any **Defense Costs** to enable it to evaluate the reasonableness and necessity of such **Defense Costs** and to verify that such **Defense Costs** were actually incurred.

C.   **DUTY TO COOPERATE -** The **Insured** shall promptly furnish the **Insurer** with all information reasonably requested by the **Insurer** including, but not limited to, copies of reports, investigations, pleadings and other papers. As a condition precedent to coverage under this **Policy**, the **Insured** shall provide the **Insurer** with such information, assistance and cooperation as the **Insurer** may reasonably request. The **Insured** shall take such steps as are necessary to fulfill its obligations to cooperate, including but not limited to ensuring that the **Insurer** is included as appropriate in any order or agreement that might otherwise limit access to information **Insurer** reasonably requires.

## SECTION IX - ALLOCATION AND ARBITRATION

A.   **ALLOCATION**

(1)   If in any **Claim** the **Insureds** are jointly and severally liable with others (including the **Company** even if no coverage is extended for such **Claim** against the **Company**) for **Loss**, then:

PD 1000 (10 18)

    (a)    100% of all **Defense Costs**, incurred jointly by the **Insured Persons** and the **Company**, shall be treated as **Loss** incurred solely by the **Insured Persons**; and

    (b)    all other **Loss** shall be allocated between the **Insured Persons** and others based on the relative legal and financial exposures of the parties to such **Claims** and in the event of a settlement, based upon the relative benefits to the parties from settlement.

(2)    If in any **Claim** the **Insureds** incur an amount consisting of both covered and uncovered **Loss** because the **Claim** includes both covered and uncovered matters, then the amount shall be allocated between covered **Loss** and uncovered loss based on the relative legal and financial exposures of the **Insureds** to the covered and uncovered matters and, in the event of a settlement, based upon the relative benefits to the parties from settlement of the covered and uncovered matters.

(3)    If a **Claim** against an **Insured** is subject to more than one Insuring Agreement and if the Limit of Liability of one of the applicable Insuring Agreements has been reduced or exhausted by a previous **Claim** or **Claims**, then the **Insurer** shall pay for any **Loss** as a result of that **Claim** under all applicable Insuring Agreements with a remaining Limit of Liability based on the relative legal and financial exposures of the **Insureds** to the remaining Limits of Liability of all applicable Insuring Agreements providing coverage to such **Claim**.

B.    **<u>ARBITRATION</u>** - The **Insurer** and the **Insured** agree to use their best efforts to reach a proper allocation of **Defense Costs**. If the **Insured** and the **Insurer** cannot agree on an allocation:

(1)    no presumption as to allocation shall exist in any mediation, arbitration, suit or other proceeding;

(2)    the **Insurer** shall advance on a current basis **Defense Costs** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined; and

(3)    the **Insurer**, if requested by the **Insured**, shall submit the allocation dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel.  The arbitration panel shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators.  In any such arbitration, each party will bear its own legal fees and expenses.

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** will be applied retroactively to all **Defense Costs**, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

## SECTION X - NOTICE OF CLAIMS AND POTENTIAL CLAIMS

A.    The **Insured**, as a condition precedent to any rights under this **Policy**, shall give the **Insurer** written notice, as soon as practicable, of any **Claim** first made and brought to the attention of an **Executive Officer** during the **Policy Period** or the Extended Reporting Period, but in no event later than ninety (90) days after the **Claim** is made.

B.   If during the **Policy Period**, an **Insured** first becomes aware of circumstances which may give rise to a **Claim**, and gives written notice to the **Insurer** of the circumstances and reasons for anticipating a **Claim**, then any **Claim** subsequently arising from such circumstances shall be deemed to have been first made during the **Policy Year** in which such notice was first given to the **Insurer**.  As a condition precedent to any coverage hereunder for such **Claims**, such notice must be specific and contain full particulars as to the names, dates, and persons involved in the underlying facts potentially giving rise to the **Claim**, as well as the identity of the potential plaintiffs and the causes of action to be asserted.

C.   The **Insured**, as a condition precedent to any rights under this **Policy**, shall also give the **Insurer** written notice, as soon as practicable, of any **Special Committee Inquiry Demand** or **Books and Records Request** first made during the **Policy Period** as soon as practicable after it occurs, but in no event later than ninety (90) days after an Executive Officer first becomes aware of such **Special Committee Inquiry Demand** or **Books and Records Request**.

D.   All notices required to be given to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address set forth in Item 5 of the Declarations. Any notice shall be deemed to have been given only when such notice is received by the **Insurer**.


## SECTION XI - MERGERS, ACQUISITIONS AND CHANGES IN BUSINESS ACTIVITIES

A.   If during the **Policy Period**, the **Company**:

(1)   acquires, merges with or creates any non-bank entity;

(2)   acquires or merges with another entity or creates or acquires a **Subsidiary**, whose assets equal or exceed twenty-five percent (25%) of the **Company's** total assets at the time of the transaction;

(3)   acquires assets which equal or exceed twenty-five percent (25%) of the **Company's** total assets at the time of the transaction;

(4)   creates or acquires a financial services holding company or converts from a bank holding company to a financial services holding company;

(5)      converts from a mutual company to a stock company; or

(6)   changes or converts its corporate structure from a C-corporation to an S-corporation;

then no coverage shall be afforded under this **Policy** for any **Loss** incurred by the **Company**, such entity, **Subsidiary**, or its **Insured Persons** resulting from any **Claim** arising out of or in any way involving such transaction, entity, **Subsidiary**, or event, prior to:

(a)   the **Company** providing written notice and any requested information regarding the transaction to the **Insurer** as soon as practicable;

(b)   the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

(c)   the **Company** accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the **Insurer**.

However, with respect to (A)(2) above, this provision shall not apply until ninety (90) days after the merger, acquisition or creation.

PD 1000 (10 18)

B.    If during the **Policy Period**, the **Company** creates or acquires a bank or bank **Subsidiary**, whose assets are less than twenty-five percent (25%) of the **Company's** total assets at the time of the transaction, the **Insurer** agrees to provide automatic coverage for such bank, bank **Subsidiary** and its **Insured Persons** for the remainder of the **Policy Period**.

C.    Any coverage otherwise afforded under this **Policy** for a **Loss** in any way involving the **Company**, any **Subsidiary**, or any acquired, merged or created entity or its **Insured Persons** shall not apply to any **Claim** arising out of or directly or indirectly resulting from:

(1)    any **Wrongful Act** or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

(2)    any other **Wrongful Act**, which, together with a **Wrongful Act** committed or allegedly committed prior to effective date of such acquisition, merger or creation constitute **Interrelated Wrongful Acts**.

## SECTION XII - CANCELLATION / NONRENEWAL / TERMINATION

A.    **NAMED INSURED CANCELLATION** - The **Named Insured** may cancel this **Policy** or any Insuring Agreement by providing written notice to the **Insurer**. If the **Named Insured** cancels this **Policy**, the **Insurer** shall only return ninety percent (90%) of the unearned premium. For multi-year **Policies**, the **Insurer** shall only return ninety percent (90%) of the unearned premium if the cancellation occurs before the first anniversary. If the cancellation occurs after the first anniversary, unearned premium will be returned on a pro-rata basis as soon as practicable.

B.    **INSURER CANCELLATION OR NONRENEWAL**

(1)    **NONRENEWAL** - The **Insurer** shall not be required to renew this **Policy** or any Insuring Agreement upon expiration of the **Policy Period**.  This **Policy** or any Insuring Agreement may be non-renewed by the **Insurer** by giving to the **Named Insured** written notice stating when, not less than sixty (60) days thereafter, such action shall become effective and the reason(s) therefore.

(2)    **CANCELLATION**

(a)    This **Policy** or any Insuring Agreement may be cancelled by the **Insurer** by giving to the **Named Insured** written notice stating when such action shall become effective and the reason(s) therefore.

(b)    The **Insurer** shall provide not less than twenty (20) days' notice of its intent to cancel for nonpayment of premium or sixty (60) days' notice of its intent to cancel for any other reason.

(c)    If the **Insurer** cancels this **Policy** or any Insuring Agreement, the **Insurer** shall return one hundred percent (100%) of the unearned premium.  The return of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

(3)    **NOTICE** - All notices pursuant to Section XII (B) will be mailed to the **Named Insured** by certified mail at the address set forth in Item 1 of the Declarations.  The mailing of such notice as aforesaid shall be sufficient proof of notice, and this **Policy** shall terminate at the date and hour specified in such notice.

PD 1000 (10 18)

C.    **TERMINATION**

    (1)    Upon the occurrence of any of the following events, this **Policy** shall be deemed terminated:

        (a)    **Financial Impairment** of the **Company** or any **Subsidiary** comprising more than fifty percent (50%) of the **Company's** total assets;

        (b)    acquisition of the **Company** by another entity or the merger or consolidation of the **Company** into another entity such that the **Company** is not the surviving entity or acquisition of substantially all of the assets of the **Company** by another entity; or

        (c)    the **Company** ceasing to engage actively in its primary business.

    (2)    Pursuant to Subsection (C)(1) above, the **Insurer** shall refund the unearned premium, calculated on a pro-rata basis. The return of any unearned premium shall not be a condition precedent to the effectiveness of the termination but such payment shall be returned as soon as practicable. The occurrence of any of the foregoing events shall not affect the **Insured's** right to purchase the Extended Reporting Period pursuant to Section III.

    (3)    In the event of **Financial Impairment** or sale of a **Subsidiary** comprising less than fifty percent (50%) of the **Company's** total assets, this termination provision shall apply only to the **Subsidiary** and its **Insured Persons** and the **Policy** shall continue in full force with respect to all other **Insureds**.


## SECTION XIII - REPRESENTATIONS AND SEVERABILITY

A.    **REPRESENTATIONS -**  It is agreed and represented that the particulars and statements contained in the **Application** are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**. By acceptance of this **Policy**, the **Insured** agrees that:

    (1)    such **Application** shall be construed as a separate **Application** for coverage by each **Insured Person**;

    (2)    this **Policy** shall not be deemed to be a series of individual insurance contracts with the **Company** and each of the **Insured Persons**; and

    (3)    the statements in the **Application** are their representations, that they are material to the acceptance of the risk or hazard assumed by the **Insurer** under this **Policy**, and that this **Policy** is issued in reliance upon the truth of such representations. As such, if there are misrepresentations in the application that are material to a **Claim** an **Insured** submits under this **Policy**, the **Insurer** may avail itself to remedies available under law, including denial, partial denial, or, rescission.

B.    **SEVERABILITY** - With respect to any statements, representations, and information contained in the **Application**, no knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person**. In the event that any statements, representations or information is not truthfully disclosed in the **Application**, and there is a **Claim** made based upon, arising from or in consequence of such untruthful or inaccurate statements, representations or information, no coverage shall be afforded under this **Policy**, for any such **Claim** as to:

    (1)    any **Insured Person** who knew of such untruthful or inaccurate statements, representations or

PD 1000 (10 18)

information;

(2)     the **Company**, to the extent of its indemnification obligation to any **Insured Person** in Item (1) above; and

(3)     the **Company**, to the extent coverage is granted to the **Company**, or if any past, present, or future chief financial officer, in-house general counsel, chief executive officer, President or Chairman of the Board knew of such untruthful or inaccurate statements, representations, or information (whether or not such individual knew of such untruthful or inaccurate statements, representation or information in the **Application**).

The **Insurer** shall not be entitled under any circumstances to rescind Insuring Agreement A.

C.      **SEVERABILITY OF EXCLUSIONS -** With respect to the Exclusions herein, to determine if coverage is available:

(1)     no **Wrongful Act**, fact pertaining to, or knowledge possessed by any **Insured Person** will be imputed to any other **Insured Person**; and

(2)     all facts pertaining to and knowledge possessed by any past, present, or future chief financial officer, in-house counsel, chief executive officer, President or Chairman of the Board of the **Company**, or any person holding any equivalent position within the **Company** (regardless of title), shall be imputed to the **Company** with respect to the Fraud/Violation of Law and Illegal Profit/Payment Exclusions.

# SECTION XIV - GENERAL TERMS AND CONDITIONS

A.      **SUBROGATION** - In the event of any payment under this **Policy,** the **Insurer** shall be subrogated to the extent of such payment to all the **Insured Persons'** and the **Company's** rights to recovery therefor, and the **Insured** shall execute all papers required and shall do everything that may be necessary to secure the **Insurer's** rights, including the execution of such documents as may be necessary to enable the **Insurer** effectively to bring suit in the name of the **Insured Persons** or the **Company**. Recovery of any **Loss** paid under the **Policy**, regardless of whether effected by the **Insurer** or **Insureds**, less the cost of making such recovery, shall be distributed first to the **Insureds** for any amounts which are in excess of the limits of liability of this **Policy** and would have been covered by this **Policy** otherwise, next to the **Insurer** for the amount of such **Loss** paid hereunder, next to the **Insureds** for any retention, and lastly to the **Insureds** for the amount of **Loss** excluded, or otherwise not covered, under this **Policy**. Recovery by the **Insurer** from reinsurance or indemnity shall not be a recovery hereunder.

B.      **ASSIGNMENT AND ACCEPTANCE -** By acceptance of this **Policy**, the **Insured** and the **Insurer** agree that this **Policy**, the **Application**, and any written Endorsements attached thereto constitute the entire agreement between the parties.  Assignment of interest under this **Policy** shall not bind the **Insurer** until its consent is endorsed hereon.

C.      **CONFORMITY TO STATUTE -** Any terms of this **Policy** which are in conflict with the terms of any applicable laws governing this **Policy** are amended to conform to such laws.

PD 1000 (10 18)

D.    **AUTHORIZATION -** By acceptance of this **Policy**, the **Insureds** agree that the **Named Insured** will act on behalf of all **Insureds** for all purposes under this **Policy** including, but not limited to, giving and receiving of all notices and correspondence, cancellation, nonrenewal or termination of this **Policy**, payment of premiums, the negotiation and acceptance of Endorsements, and receipt of any return premiums that may be due under this **Policy**.

E.    **CHANGES** - Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Insurer** shall not affect a waiver or a change in any part of this **Policy** or stop the **Insurer** from asserting any right under the terms of this **Policy**, nor shall the terms, conditions and limitations of this **Policy** be waived or changed, except by written Endorsement issued to form a part of this **Policy**.

F.    **ACTION AGAINST THE INSURER** - No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this **Policy**, and until the **Insured's** obligation to pay is finally determined, either by adjudication or by written agreement of the **Insured(s)**, the claimant, and the **Insurer**.

No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured(s)**, nor shall the **Insurer** be impleaded by any **Insured(s)** and/or the **Company** or their legal representative.

G.    **OTHER INSURANCE OR INDEMNIFICATION** - This **Policy** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Costs**, payable under this **Policy** shall be excess to:

(1)    any other existing insurance regardless of whether collectable, including but not limited to, any insurance under which there is a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**; and

(2)    indemnification to which an **Insured** is entitled from any entity other than the **Company**.

H.    **LOSS INFORMATION** - The **Insurer** will provide **Loss Information** to the **Company** within ten (10) days of the **Company's** request or, if required by statute, at the same time as any notice of cancellation or nonrenewal of this **Policy**.  However, **Loss Information** shall not include information on any reserve.

I.    **INSOLVENCY/BANKRUPTCY** - The insolvency or bankruptcy of the **Insured** or of the estate of such **Insured** shall not release the **Insurer** from its obligations nor deprive the **Insurer** of its rights under this **Policy**.

J.    **HEADINGS AND SUB-HEADINGS** - The descriptions in the headings and sub-headings of this **Policy** are solely for convenience and form no part of the terms and conditions of coverage. Please note that terms in boldface type shall have the meaning set forth in Section IV. of the Definitions.

K.    **WORLDWIDE TERRITORY** – This Policy applies to **Wrongful Acts** occurring and **Claims** made anywhere in the world where permitted by law.

L.    **MOST FAVORABLE TERMS** - In the event that there is an inconsistency between the State Amendatory Endorsement and any provision modifying the "Insurer Cancellation or Nonrenewal" or "Extended Reporting Period" sections of this **Policy**, then it is understood and agreed that in such situation, the **Insurer** shall apply the terms and conditions more favorable to the **Insured**, where permitted by law**.**

PD 1120 (10 18)

## BROAD FORM COMPANY LIABILITY INSURING AGREEMENT
## COMPANY COVERAGE

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement, as follows:

1.      The attached **Policy** is amended by adding the following Insuring Agreement:

### BROAD FORM COMPANY LIABILITY INSURING AGREEMENT

The **Insurer** will pay on behalf of the **Company**, **Loss** resulting from **Claims** first made during the **Policy Period** or Extended Reporting Period against the **Company** for allegations involving or relating to:

(1)      **Lending Services**;

(2)      **Professional Services**, including but not limited to **Brokerage/Advisory Services** and **Insurance Services**;

(3)      the **Company** while acting solely in the capacity as administrator, custodian, or trustee under any individual retirement account (IRA) or H.R. 10 Plan (Keogh Plan) outside of the scope of any Trust Department or Trust **Subsidiary** of the **Company**; or

(4)      other causes of action

for which the **Company** is legally obligated to pay for **Wrongful Acts**. In the event that a **Claim** is covered under this Insuring Agreement, the **Insurer** shall not be liable for payment of **Loss** in connection with such **Claim** under any other Insuring Agreement.

2.      For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any amendments thereto shall apply except:

A.      Section II, entitled "Additional Coverages", is deleted in its entirety.

B.      All of the definitions set forth in Section IV, entitled "Definitions", shall apply and the following are added:

**Lending Services** means services involving or relating to an extension of credit, an agreement or refusal to extend credit, **Loan Servicing**, or the collection, restructuring, repossession, or foreclosure of any extension of credit by the **Company.**

**Professional Services** means only those services performed or required to be performed by an **Insured** for or on behalf of a customer of the **Company**:

(1)      for a fee, commission, other monetary compensation, or other remuneration which inures to the benefit of the **Insured**; or

(2)      where a fee, commission or other monetary compensation would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**.

PD 1120 (10 18)

C.    All of the exclusions set forth in Section V of the **Policy**, entitled "Exclusions Applicable to all Insuring Agreements", shall apply except the Bodily/Personal Injury and Property Damage Exclusion, which is deleted and replaced as follows:

**Bodily/Personal Injury and Property Damage Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, damage to or destruction of any tangible or intangible property including loss of use thereof, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, abuse of process, assault, battery, loss of consortium, invasion of privacy, defamation, false light, libel, or slander. ·

D.    Section V, entitled "Exclusions Applicable to all Insuring Agreements", is further amended to add the following:

**Bonding/Insurance Company Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** that is brought directly or indirectly by or for the benefit of any insurance carrier or bond carrier of the **Company**, or any affiliate of the **Company**, regardless in whose name such **Claim** is actually made.

**Intellectual Property Exclusion –** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged right under the law of intellectual property, whether founded in state or federal law, and including but not limited to infringement of trademark, copyright, patent, trade name, trade dress, trade secret, trademark, service mark, service name, or the actual or alleged misappropriation or conversion of expression, ideas, processes, or uses.

**Legal Lending Limit Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any extension of credit which was, at the time of its making, in excess of 110% of the legal lending limit of the **Company**.

**Mechanical Malfunction Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the mechanical or electronic failure, breakdown or malfunction of any machine or system of machines.

**Notary Services Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the notarization or certification of a signature of a person unless that person or someone claiming to be that person physically appeared before the **Insured** at the time of notarization or certification.

**Safe Deposit Operation Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving safe deposit box operations of the **Company**.

**Securities Liability Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with, arising out of, or in any way involving **Securities Claims**.

3.    This Insuring Agreement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 1150 (10 18)

## EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement, as follows:

1.      The attached **Policy** is amended by adding the following Insuring Agreement:


### EMPLOYMENT PRACTICES LIABILITY INSURING AGREEMENT

The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from **Claims** first made during the **Policy Period** or Extended Reporting Period against the **Insured** for which the **Insured** is legally obligated to pay for **Wrongful Employment Acts**.


2.      For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any amendments thereto shall apply except:

A.      Section II (B), entitled "Not-for-Profit Directorships", is deleted.

B.      For purposes of this endorsement, the definitions of **Claim**, **Interrelated Wrongful Acts**, **Loss**, and **Wrongful Act** and all references used throughout the **Policy** are deleted.

C.      For purposes of this endorsement, the following definitions are added:

**Claim**, either in singular or plural, means any of the following instituted against an **Insured**:

(1)     a written demand for monetary damages or non-monetary relief;
(2)     a civil proceeding commenced by the service of a complaint or similar pleading;
(3)     a criminal proceeding commenced by a return of an indictment;
(4)     an arbitration or mediation proceeding in which monetary damages are sought;
(5)     a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; or
(6)     a written request to toll or waive a statute of limitations, relating to a potential **Claim** described in Subsections (1) through (5) above,

for a **Wrongful Employment Act** including any appeal from such proceeding. **Claim** shall not include a labor or grievance arbitration pursuant to a collective bargaining agreement.

**Interrelated Wrongful Employment Acts** means **Wrongful Employment Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

**Loss** means **Defense Costs** and any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, pre- and post-judgment interest, punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law. **Loss** shall not include:

PD 1150 (10 18)

(1)     criminal or civil fines or penalties imposed by law, and liquidated damages under the Age Discrimination in Employment Act;

(2)     the payment of insurance plan benefits the claimant may have been entitled to as an **Insured Person**, including but not limited to benefits payable pursuant to **ERISA** or Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended;

(3)     costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local rules or laws, or in complying with any other federal, state or local rules or laws of any kind;

(4)     other than **Defense Costs**, front pay, future damages or other future economic relief or the equivalent thereof which compensates the claimant for damages beyond the date of settlement or adjudication, where the **Company** has the option pursuant to a settlement or adjudication to reinstate the claimant, but fails to reinstate the claimant;

(5)     other than **Defense Costs**, compensation earned by the claimant while employed by the **Company** but not paid by the **Company** for reasons other than **Wrongful Employment Acts**, or damages determined to be owed under an express written contract of employment or an express written obligation to make payments in the event of termination of employment; or

(6)     any matters which are uninsurable under the law pursuant to which this Insuring Agreement shall be construed.


**Wrongful Employment Act**, either in singular or plural, means any actual or alleged act, error or omission by the **Insured** that constitutes or causes:

(1)     **Wrongful Termination**, **Discrimination** or **Harassment**;

(2)     employment-related misrepresentation or retaliation; employment-related libel, slander, humiliation, defamation, or invasion of privacy; wrongful failure to employ or promote; wrongful deprivation of career opportunity; wrongful demotion; negligent evaluation; negligent hiring; negligent retention; wrongful discipline; or

(3)     any violation of any statutory or common law relating to employment other than those statutes or regulations set forth in the Violation of Employment Law Exclusion.

D.      Section IV, entitled "Definitions", is further amended to add the following:

**Discrimination** means the termination of employment, the failure or refusal to hire or promote, the demotion of, or the employment-related defamation of any individual because of race, color, creed, national origin, sex, sexual orientation or preference, religion, age, gender, disability or handicap, pregnancy, or any other legally protected status.

**Harassment** means:

(1)     unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when:

PD 1150 (10 18)

(a)    submission to such conduct is made either explicitly or implicitly a term and condition of an individual's employment;

(b)    submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual;

(c)    such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment;

(d)    the allegation of harassment is brought by any customer(s), client(s), or other individual(s), class of individuals or group, and whether direct, indirect, intentional or unintentional; or

(2)    workplace harassment of a non-sexual nature as a consequence of race, color, creed, national origin, sex, sexual orientation or preference, religion, age, gender, disability or handicap, pregnancy, or any other legally protected status, which has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment.

**Wrongful Termination** means termination of an employment relationship in a manner which is against the law or in breach of an oral and/or implied agreement to continue employment, including constructive and retaliatory discharge.

F.    Section V, entitled "Exclusions Applicable to all Insuring Agreements", is amended to delete all Exclusions and add the following:

**Bodily/Personal Injury and Property Damage Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury, sickness (other than emotional distress or mental anguish), disease, or death of any person, damage to or destruction of any tangible or intangible property including loss of use and diminution thereof, wrongful entry, slander of title, eviction, false arrest, false imprisonment, malicious prosecution, abuse of process, assault, battery, loss of consortium, invasion of privacy, defamation, false light, libel, or slander.

**Foreclosed Property Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the ownership, sale, operation, management or control of any entity or property acquired by the **Company** as security or collateral for any loan, lease or extension of credit.

The Foreclosed Property Exclusion shall not apply to **Claims** resulting from **Wrongful Acts** in connection with the ownership, sale, operation, management or control of any one to four family residential property.

**Non-Subsidiary Wrongful Acts Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** against any **Subsidiary**, or any **Employee**, **Director or Officer**, or **Executive Officer** of such **Subsidiary**, for any **Wrongful Act** or **Interrelated Wrongful Acts** actually or allegedly committed in whole or in part during any time when the entity was not a **Subsidiary**.

**Prior and Pending Proceeding Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any demand, claim,

PD 1150 (10 18)

suit, or other proceeding against any **Insured** initiated prior to the respective date set forth in Item 13 of the Declarations, or arising out of or in any way involving the same or substantially the same fact, circumstance or situation underlying or alleged in such prior demand, claim, suit or other proceeding.

**Prior Notice Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any **Wrongful Employment Act** or any **Wrongful Employment Act** which is part of any **Interrelated Wrongful Employment Acts**, or any fact, circumstance or situation, which has been the subject of any notice given to any carrier other than the **Insurer** under any similar insurance policy providing protection for any **Insured**.

**Violation of Employment Law Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** for any **Claim** arising out of or in any way involving an actual or alleged violation of the responsibilities, obligations or duties imposed by:

(1)    ERISA, Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended, any Worker's Compensation, Unemployment Insurance, or disability benefits law, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, or any rules or regulations promulgated under any of the above statutes, or similar provisions of any federal, state or local statutory, administrative or common law; or

(2)    the Fair Labor Standards Act (except the Equal Pay Act) or any similar law, the Wage Payment and Collection Act or any other federal, state or local law, rule or regulation concerning wage and hour practices, off-the-clock work, overtime compensation on-call time compensation, compensation for waiting tie and dressing time, minimum wage compensation, timely payment of wages, reimbursement of expenses, classification of employees for the purposes of determining eligibility for overtime, on-call, and minimum wage compensation, meal and rest periods, maintenance of accurate records, conversions, unjust enrichment or unfair business practices;

provided, however, this exclusion shall not apply to **Loss** in connection with that portion of a **Claim** alleging retaliation for the exercise of any rights under such laws.

G.    Subsection (2) of Section VIII (A) of the **Policy**, entitled "No Duty To Defend", is deleted and replaced as follows:

(2)    The **Insured** shall not incur **Defense Costs**, admit liability for, settle, or offer to settle any **Claim** without the **Insurer's** prior written consent, which shall not be unreasonably withheld.  The **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.  If the **Insured** receives a settlement offer that the **Insurer** deems reasonable and the **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

(a)    the amount for which the **Claim** could have been settled for; plus

(b)    **Defense Costs** accrued as of the date such settlement was proposed; plus

PD 1150 (10 18)

(c)    fifty percent (50%) of the covered **Loss**, including **Defense Costs** incurred after the date such settlement was proposed, in excess of the amount for which the **Claim** could have been settled.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable Retention set forth in the Declarations, Subpart (c) above shall not apply and the **Insurer's** liability for all **Loss** arising from such **Claim** shall not exceed the amount for which the **Claim** could have been settled plus **Defense Costs** incurred as of the date such settlement was proposed.

Any amounts paid by the **Insurer** under Subparts (a), (b), or (c) above shall be part of and not in addition to the applicable Limit of Liability set forth in Item 9 of the Declarations.

H.    Section XI, entitled "Mergers, Acquisitions and Changes in Business Activities", is deleted and replaced as follows:

## SECTION XI - MERGERS AND ACQUISITIONS

A.    Except as provided by Subsection (B) below, if during the **Policy Period**, the **Company** adds additional **Employees** through acquisition, merger with another entity or through the creation or acquisition of a **Subsidiary**, then no coverage shall be afforded under this **Policy** for any **Loss** incurred by the **Company**, such entity, **Subsidiary**, or its **Insured Persons** resulting from any **Claim** first made, prior to:

(1)    the **Company** providing written notice of such transaction, including any requested information regarding the transaction, to the **Insurer** as soon as practicable;

(2)    the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

(3)    the **Company** accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the **Insurer**.

However, this provision shall not apply until ninety (90) days after the acquisition, merger or creation.

B.    If during the **Policy Period**, the **Company** creates or acquires a bank or bank **Subsidiary** whose assets are less than twenty-five percent (25%) of the **Company's** total assets at the time of the transaction, the **Insurer** agrees to provide automatic coverage for such bank, bank **Subsidiary** and its **Insured Persons** for the remainder of the **Policy Period**.

C.    Any coverage afforded under this **Policy** for a **Loss** in any way involving the **Company**, **Subsidiary**, or any acquired, merged or created entity or its **Insured Persons** shall not apply to any **Claim** arising out of or directly or indirectly resulting from:

(1)    any **Wrongful Employment Act** or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

PD 1150 (10 18)

    (2)      any other **Wrongful Employment Act**, which, together with **Wrongful Employment Acts** committed or allegedly committed prior to effective date of such acquisition, merger or creation constitute **Interrelated Wrongful Employment Acts**.

3.    This Insuring Agreement shall be effective as of 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 1160 (10 18)

## TRUST SERVICES LIABILITY INSURING AGREEMENT

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement, as follows:

1.    The attached **Policy** is amended by adding the following Insuring Agreement:

### TRUST SERVICES LIABILITY INSURING AGREEMENT

The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from **Claims** first made during the **Policy Period** or the Extended Reporting Period against the **Insured** for which the **Insured** is legally obligated to pay for **Wrongful Acts** in rendering or failing to render **Trust Services**.

2.    For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any amendments thereto shall apply except:

A.    Section II (B), entitled "Not-for-Profit Directorships", is deleted.

B.    Section V, entitled "Exclusions Applicable to all Insuring Agreements", is amended to delete the following:

"Foreclosed Property Exclusion";
"Short Swing Profit Exclusion"; and
"Trust Services Exclusion".

All other exclusions shall still apply.

C.    Section V, entitled "Exclusions Applicable to all Insuring Agreements", is further amended to delete and replace the "Brokerage/Advisory Services Exclusion", and "Illegal Profit/Payment Exclusion" as follows:

**Brokerage/Advisory Services Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the actual or alleged rendering or failing to render **Brokerage/Advisory Services**, except to the extent such services are provided in connection with the **Insured** rendering or failing to render **Trust Services**.

**Illegal Profit/Payment Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

(1)    any **Insured** gaining, in fact, any profit, remuneration, or financial advantage to which the **Insured** was not legally entitled; or

(2)    conflicts of interest, engaging in self-dealing, or acting in bad faith.

D.    Section V, entitled "Exclusions Applicable to all Insuring Agreements", is further amended to add the following:

PD 1160 (10 18)

**Failure to Maintain Insurance Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any actual or alleged failure to effect or maintain any policy of insurance.

E.    Section XI, entitled "Mergers, Acquisitions and Changes in Business Activities", is deleted and replaced as follows:

### SECTION XI - MERGERS AND ACQUISITIONS

A.    If during the **Policy Period**, the **Company** acquires or merges with another entity or creates or acquires a **Subsidiary**, with trust assets under management that equals or exceeds twenty-five percent (25%) of the **Company's** total trust assets under management at the time of the transaction, then no coverage shall be afforded under this **Policy** for any **Loss** incurred by the **Insured** or such entity resulting from any **Claim** arising out of or in any way involving such trust assets, prior to:

(1)    the **Company** providing written notice and any requested information regarding the transaction to the **Insurer** as soon as practicable;

(2)    the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

(3)    the **Company** accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the **Insurer**.

However, this provision shall not apply until ninety (90) days after the acquisition, merger or creation.

B.    If during the **Policy Period**, the **Company** creates or acquires trust assets representing less than twenty-five percent (25%) of the **Company's** total trust assets under management at the time of the transaction, the **Insurer** agrees to provide automatic coverage for such trust assets for the remainder of the **Policy Period**.

C.    Any coverage otherwise afforded under this **Policy** for a **Loss** in any way involving trust assets described in (A) or (B) above shall not apply to any **Claim** arising out of or directly or indirectly resulting from:

(1)    any **Wrongful Act** or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

(2)    any other **Wrongful Act**, which, together with a **Wrongful Act** committed or allegedly committed prior to effective date of such acquisition, merger or creation constitute **Interrelated Wrongful Acts**.

3.    This Insuring Agreement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 1165 (10 18)

## Trust Services Liability Modification
## Delete Failure to Maintain Insurance Exclusion

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Trust Services Liability Insuring Agreement is amended as follows:

The "Failure to Maintain Insurance Exclusion" is deleted in its entirety.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than above stated.

PD 1170 (10 18)

## FIDUCIARY LIABILITY INSURING AGREEMENT

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement, as follows:

1.    The attached **Policy** is amended by adding the following Insuring Agreements:

### FIDUCIARY LIABILITY INSURING AGREEMENT

The **Insurer** will pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of a **Claim** first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if exercised, for an **ERISA Wrongful Act.**

### PRE-CLAIM LABOR INVESTIGATORY INSURING AGREEMENT

The **Insurer** will pay on behalf of the **Insureds**, all **Pre-Claim Labor Investigatory Costs** incurred by the **Insureds** as a result of a **Pre-Claim Labor Investigation,** first commenced during the **Policy Period**, provided that as a condition precedent to coverage provided herein, the **Insureds** must notify the **Insurer** within 30 days of discovery of the **Pre-Claim Labor Investigation**.

The Retention and Limit of Liability for the Pre-Claim Labor Investigatory Insuring Agreement will be the same as the Retention and Limit of Liability for Fiduciary Liability Insuring Agreement as set forth in Items 9 and 10 of the Declarations.  The Limit of Liability for Pre-Claim Labor Investigatory Cost Coverage constitutes a sublimit and therefore shall be part of, and not in addition to the Fiduciary Liability Insuring Agreement Limit of Liability set forth in Item 9 of the Declarations.

### VOLUNTARY COMPLIANCE PROGRAM INSURING AGREEMENT

The **Insurer** will pay on behalf of the **Insured**:

(1)    **Voluntary Compliance Program Fees** with respect to a **Voluntary Compliance Program Notice** first given to the **Insurer** during the **Policy Period** or the Extended Reporting Period, provided that the **Voluntary Compliance Program Fees** are incurred after such **Voluntary Compliance Program Notice** is first given to the **Insurer**; and

(2)    **Defense Costs** with respect to a **Voluntary Compliance Program Notice** first given to the **Insurer** during the **Policy Period** or the Extended Reporting Period, provided that the **Defense Costs** are incurred after such **Voluntary Compliance Program Notice** is first given to the **Insurer**

The **Insurer's** maximum Limit of Liability for all **Voluntary Compliance Program Fees** and **Defense Costs** with respect to all **Voluntary Compliance Program Notices** shall be $100,000.  Such amounts will be included within and not in addition to the Fiduciary Liability Insuring Agreement Limit of Liability set forth in Item 9 of the Declarations. For purposes of the coverage afforded by this Insuring Agreement only, no Retention shall apply.

2.    Section II, entitled "Additional Coverages," is deleted in its entirety.

3.   For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the **Policy** and any amendments thereto shall apply except:

A.   Section II (B), entitled "Not-for-Profit Directorships", is deleted.

B.   Section IV, entitled "Definitions", is amended to add the following:

**Administration** means counseling **Employees** with respect to, interpreting, handling records in connection with, or effecting enrollment or cancellation of **Employees** under any **Employee Benefit Plan**.

**Benefit Claim Denial** means an appeal of an adverse benefits determination by an **Insured** pursuant to the U.S. Department of Labor's claim procedure regulation at 29 C.F.R. Section 2560.503-1(h) or any similar claim procedures pursuant to applicable law.

**Employee Benefit Plan** means any **Employee Welfare Benefit Plan** or any **Employee Pension Benefit Plan** operated solely by the **Company** or jointly by the **Company** and a labor organization for the benefit of the **Employees** of the **Company**.

**Employee Pension Benefit Plan** means any plan, fund, or program established or maintained by the **Company** for its **Employees**, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program provides retirement income to **Employees** or results in a deferral of income by **Employees** for periods extending to the termination of employment or beyond.

**Employee Welfare Benefit Plan** means any plan, fund, or program established or maintained by the **Company** for its **Employees** for the purpose of providing benefits for its participants or their beneficiaries, through the purchase of insurance or otherwise, including:

(1)   medical, surgical, or hospital care or benefits; benefits in the event of sickness, accident, disability, death or unemployment; vacation benefits, apprenticeship or other training programs; day care centers; scholarship funds; prepaid legal services; or

(2)   any benefit described in Section 186(c) of **ERISA**.

**ERISA Wrongful Act** means a **Wrongful Act** relating to the violation of any of the responsibilities, obligations or duties imposed by **ERISA**, any regulations applicable thereto, or any common law or statutory law relating to any **Employee Benefit Plan** or the **Administration** of any **Employee Benefit Plan**.

**HIPAA Civil Money Penalties** means any civil money penalties imposed upon an **Insured** for such **Insured's** violation of the privacy provisions of the Health Insurance Portability and Accountability Act of 1996, as amended.

**Pre-Claim Labor Investigation** means a fact-finding investigation by the U.S. Department of Labor, the U.S. Pension Benefit Guaranty Corporation, or any similar governmental authority, of an **Insured,** that is commenced by an **Insured's** receipt of a written document from such governmental authority, identifying such **Insured** or the **Company** as the target of an

PD 1170 (10 18)

investigation relating to the **Company's** responsibilities, obligation or duties imposed by ERISA, any regulations applicable thereto, or any common law or statutory law relating to any **Employee Benefit Plan** or the **Administration** of any **Employee Benefit Plan**.

A **Pre-Claim Labor Investigation** does not include routine regulatory or financial audits, examinations, hearings, inspections or reviews.

**Pre-Claim Labor Investigatory Costs** means reasonable and necessary legal fees and expenses consented to by the Insurer, such consent not to be unreasonably withheld, and incurred by the **Insured** solely in connection with the preparation for and response to a **Pre-Claim Labor Investigation**. **Pre-Claim Labor Investigatory Costs** do not include salaries, wages, overhead, or benefit expenses.

**Voluntary Compliance Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the U.S. Internal Revenue Service or the U.S. Department of Labor, including but not limited to the Voluntary Correction Program, as described in the Employee Plans Compliance Resolutions System ("EPCRS"), IRS Rev. Proc. 2006-27, as amended, the Voluntary Compliance Resolution Program, the Walk-In Closing Agreement Program, the Tax Sheltered Annuity Voluntary Correction Program ("TVC"), the Audit Closing Agreement Program, the Administrative Policy Regarding Self-Correction, the Delinquent Filer Voluntary Compliance Program, or the Voluntary Fiduciary Correction Program.

**Voluntary Compliance Program Fees** means fees, fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to a **Voluntary Compliance Program** for the actual or alleged inadvertent non-compliance by an **Employee Benefit Plan** with any statute, rule or regulation. **Voluntary Compliance Program Fees** shall not include:

(1) any costs to correct the non-compliance, or any other charges, expenses, taxes or damages; or

(2) any fees, fines, penalties or sanctions relating to an **Employee Benefit Plan** which, as of the earlier inception of this **Policy** or the inception of the first **Policy** of which this **Policy** is a renewal or replacement, any **Insured Person** knew to be actually or allegedly non-compliant.

**Voluntary Compliance Program Notice** means prior written notice to the **Insurer** by the **Insured** of the **Insured's** intent to enter into a **Voluntary Compliance Program.**

C.    Section IV, entitled "Definitions", is further amended to delete and replace the definition of **Claim**, **Insured,** and **Loss** as follows:

**Claim**, either in singular or plural, means any of the following instituted against an **Insured**:

(1)    a written demand, other than a **Pre-Claim Labor Investigation** or a **Voluntary Compliance Program Notice**, for monetary damages or non-monetary relief that is received during the **Policy Period** or, if applicable, Extended Reporting Period by an **Insured**;

(2)    a civil proceeding commenced by the service of a complaint or similar pleading;

(3)    a criminal proceeding commenced by a return of an indictment;

PD 1170 (10 18)

(4)    a written demand for an arbitration or mediation proceeding in which monetary damages are sought;

(5)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

(6)    a written request to toll or waive a statute of limitations, relating to a potential **Claim** described in Subsections (1) through (5) above;

(7)    solely with respect to a criminal proceeding: (a) an arrest; (b) the return of an indictment, information or similar document; or (c) the receipt of an official request for extradition;

(8)    a written notice of commencement of a **Benefit Claim Denial,** if it is reported to the **Company** in writing during the **Policy Period**;

(9)    with respect to the Pre-Claim Labor Investigatory Insuring Agreement only, a **Pre-Claim Labor Investigation** that is commenced during the **Policy Period** or, if applicable, Extended Reporting Period;

(10)    with respect to the Voluntary Compliance Program Insuring Agreement only, a **Voluntary Compliance Program Notice** that is received during the **Policy Period** or, if applicable, Extended Reporting Period;

(11)    an investigation of an **Insured Person**, solely in his or her fiduciary capacity with respect to any **Employee Benefit Plan**, commenced by the **Insured Person's** receipt of a written document from an Enforcement Unit identifying such **Insured Person** as the target of an investigation, including a Wells Notice, target letter or search warrant; or

(12)    a written request upon an **Insured Person** for witness testimony or document production, commenced by the service of a subpoena or other similar document compelling such testimony or production of documents; provided that the **Company** has agreed to indemnify the **Insured Persons** for the costs incurred for complying with such requests

for an **ERISA Wrongful Act,** including any appeals from such proceedings.

**Insured**, either in singular or plural, means the **Insured Persons**, the **Company**, any **Employee Benefit Plan** existing before the **Policy Period**, any **Employee Benefit Plan** created during the **Policy Period**, and any **Employee Benefit Plan** acquired during the **Policy Period** pursuant to Section XI.

**Loss** means **Pre-Claim Labor Investigatory Costs**, **Voluntary Compliance Program Fees**, **Defense Costs** and any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgements, settlements and pre- and post-judgment interest. **Loss** shall also include punitive or exemplary damages and the multiple portion of any multiplied damage award to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has an adequate relationship to the relevant **Insured**. **Loss** shall not include:

(1)    taxes, criminal or civil fines or penalties imposed by law, except with respect to:

    (i)    any **Voluntary Compliance Program Fees**; and

    (ii)    **HIPAA Civil Money Penalties**;

(2)    the payment of insurance plan benefits the claimant may have been entitled to as an **Insured Person**, including but not limited to benefits payable pursuant to ERISA or Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended;

PD 1170 (10 18)

(3)      any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit to any customer or any forgiveness of debt, including any unpaid, unrecoverable or outstanding amounts resulting from a loan, lease or extension of credit that has been sold;

(4)      costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, rules or similar legal authority, or in complying with any other federal, state or local laws, rules or similar legal authority;

(5)      any amounts incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of hazardous materials;

(6)      any amounts the **Company** is obligated to pay or has paid pursuant to any written or oral contract or agreement unless agreed to by the **Insurer**;

(7)      arising out of or in any way involving the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures, but only to the extent that such investment product's depreciation (or failure to appreciate) is due to market fluctuation;

(8)      any restitution or disgorgement, or the payment of **Loss** (other than **Defense Costs**) which is attributable to restitution or disgorgement, or similar payments arising out of, or relating to, restitution or disgorgement, including but not limited to the return of fees, commissions or charges for the **Company's** services; or

(9)      any matters which are uninsurable under the law pursuant to which this Insuring Agreement shall be construed.

D.      All of the exclusions set forth in Section V of the **Policy**, entitled "Exclusions Applicable to all Insuring Agreements", shall apply except the "ERISA Exclusion," the "Insolvency Exclusion," and the "Insured vs. Insured Exclusion," which are deleted.

E.      Section V of the **Policy**, entitled "Exclusions Applicable to all Insuring Agreements", is further amended to add the following:

**Bonding/Insurance Company Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** that is brought directly or indirectly by or for the benefit of any insurance carrier or bond carrier of the **Company**, or any affiliate of the **Company**, regardless in whose name such **Claim** is actually made.

**Failure to Collect Contribution/Benefits Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** for:

(1)      the failure to collect contributions owed to an **Employee Benefit Plan** or other **Employee** Program unless such failure is due to the negligence of the **Insured**;

(2)      the return or reversion to an employee of any contribution or asset; or

PD 1170 (10 18)

(3)    benefits which would be due under any **Employee Benefit Plan** if such **Employee Benefit Plan** complied with all applicable law, including but not limited to **Loss** resulting from the payment of plaintiff attorneys' fees based upon a percentage of such benefits or payable from a common fund established to pay such benefits.

**Violation of Employment Law Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving an actual or alleged violation of the responsibilities, obligations or duties imposed by any Worker's Compensation, Unemployment Insurance, Social Security or disability benefits law, the Fair Labor Standards Act, National Labor Relations Act, Worker Adjustment and Retraining Notification Act, Occupational Safety and Health Act, any rules or regulations promulgated under any of the above statutes, or similar provisions of any federal, state or local statutory, administrative or common law.

F.    Section V of the **Policy**, entitled "Exclusions Applicable to All Insuring Agreements", is amended to delete and replace the Bodily/Personal Injury and Property Damage Exclusion and the Contract Exclusion, as follows:

**Bodily/Personal Injury and Property Damage Exclusion -** The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** for actual or alleged bodily injury, sickness, disease, or death of any person, damage to or destruction of any tangible or intangible property including loss of use thereof, wrongful entry, slander of title, eviction, false arrest, false imprisonment, malicious prosecution, abuse of process, assault, battery, mental anguish, emotional distress, loss of consortium, invasion of privacy, defamation, false light, libel, or slander.  But this exclusion does not apply to claims for mental anguish or emotional distress arising directly from an **ERISA Wrongful Act**.

**Contract Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the assumption of any liability to defend, indemnify, or hold harmless any person or entity, other than an **Insured Person**, under any written contract or agreement unless such liability:

(1)    would be imposed regardless of the existence of such contract or agreement; or
(2)    was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Employee Benefit Plan** was established.

G.    Section VI (A) of the **Policy**, entitled "Limit of Liability", is amended to add the following Subsection:

(4)    The Limit of Liability for all **Loss**, in connection with **HIPAA Civil Money Penalty Claims** described above will be $100,000 which amount will be included within, and not in addition to the Fiduciary Limit of Liability set forth in Item 9 of the Declarations.

(5)     The **Insurer** agrees to provide, without additional charge, a one-time reinstatement of the Limit of Liability under this Insuring Agreement to the extent such Limit of Liability is diminished by paid **Loss** resulting from paid **Claims** under this Insuring Agreement. Should a **Claim** exhaust the Limit of Liability under this Insuring Agreement, the Limit of Liability will only be reinstated for subsequent **Claims**.  This reinstatement shall not serve to increase the Limit of Liability for any single **Claim**.

H.    Section VI(B) of the **Policy**, entitled "Retention and Indemnification", is amended to add the following Subsection:

(5)     The retention applicable to **Claims** for **HIPAA Civil Money Penalties** shall be $0.

I.     Section VII of the **Policy**, entitled "Non-Erosion of Insuring Agreement A and Order of Payments", is amended to add the following Subsection:

C.    **ORDER OF PAYMENTS IN EVENT OF LIQUIDATION OR REORGANIZATION**

With respect to any **Claim** first made against the **Insureds** during the **Policy Period**, regardless of whether such **Claim** is first made before or after the effective date of this endorsement:

If a liquidation or reorganization proceeding is commenced pursuant to the United States Bankruptcy Code or any similar state or local law by or against the **Insured** (or any such organization in its capacity as a debtor in possession under the United States bankruptcy law) or any subsidiary of such organizations, and in the event payment of **Loss** is due under this coverage section but, in the sole discretion of the Insurer, the amount of such **Loss** in the aggregate potentially exceeds the remaining available Limit of Liability for this coverage section, the **Insurer** shall:

(1)     first pay such covered **Loss** incurred by the **Insured Persons** and the **Employee Benefit Plans**; then
(2)     to the extent of any remaining amount of the Limit of Liability available after payment under (a) above, pay such covered **Loss** incurred by the **Insured**. Except as otherwise provided in this endorsement, the **Insurer** may pay covered **Loss** as it becomes due under this **Policy** without regard to the potential for other future payment obligations under this **Policy**.

J.     Section X of the **Policy**, entitled "Notice of Claims and Potential Claims", is deleted and replaced by the following:

## SECTION X - NOTICE OF CLAIMS AND POTENTIAL CLAIMS

A.    The **Insured**, as a condition precedent to any rights under this **Policy**, shall give the **Insurer** written notice, as soon as practicable, of any **Claim** first made and brought to the attention of an **Executive Officer** during the **Policy Period** or the Extended Reporting Period, but in no event later than 90 days after the **Claim** is made.

B.   If during the **Policy Period**, an **Executive Officer** first becomes aware of circumstances which may give rise to a **Claim**, and gives written notice to the **Insurer** of the circumstances and reasons for anticipating a **Claim**, then any **Claim** subsequently arising from such circumstances, or from the **Voluntary Compliance Program Notice** referred to above, shall be deemed to have been first made during the **Policy Year** in which such notice was first given to the **Insurer**.  As a condition precedent to any coverage hereunder for such **Claims**, such notice must be specific and contain full particulars as to the names, dates, and persons involved in the underlying facts potentially giving rise to the **Claim**, as well as the identity of the potential plaintiffs and the causes of action to be asserted.

C.   All notices required to be given to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address set forth in Item 5 of the Declarations.

4.   This Insuring Agreement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 1175 (10 18)

## Fiduciary Liability Modification
## Delete One Time Reinstatement

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Fiduciary Liability Insuring Agreement is modified is follows:

Number 3G. Subsection 6, which states the following:

(6)     The **Insurer** agrees to provide, without additional charge, a one-time reinstatement of the Limit of Liability under this Insuring Agreement to the extent such Limit of Liability is diminished by paid **Loss** resulting from paid **Claims** under this Insuring Agreement. Should a **Claim** exhaust the Limit of Liability under this Insuring Agreement, the Limit of Liability will only be reinstated for subsequent **Claims**. This reinstatement shall not serve to increase the Limit of Liability for any single **Claim**.

 is deleted in its entirety.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of **Policy** other than as above stated.

PD 2005 (10 18)

## Policyholder Disclosure
## Notice of Terrorism Insurance Coverage

Coverage for acts of terrorism is included in your **Policy**. You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to:

   (1)   be an act of terrorism;
   (2)   be a violent act or an act that is dangerous to human life, property, or infrastructure;
   (3)   have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and
   (4)   have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as **Insurers**' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0.00 and does not include any charges for the portion of losses covered by the United States government under the Act.

All other terms and conditions of the **Policy** remain unchanged.

*If you would like to reject the coverage for "certified" Acts of Terrorism, please provide the **Insurer** written confirmation of such and an exclusion will be attached to your **Policy**.*

PD 2006 (10 18)

## COVERAGE FOR CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the Directors & Officers Liability Policy.

1.      Subject to all other terms and conditions of this **Policy**, coverage is available for **Loss** caused by a **Certified Act of Terrorism** as defined below.

        **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provision of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of Terrorism" include the following:

        (1) The act resulted in Insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

        (2) The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.      With respect to any one or more **Certified Acts of Terrorism** under the Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses. As such, if aggregate **Insured** losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our **Insurer** deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such cases **Insured** losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

3.      The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for **Loss** that is otherwise excluded under this Endorsement.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** to which this endorsement is attached.

PD 2035 (10 18)

## Notary Services
## Retention Schedule

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

Section VI (B), entitled "Retention and Indemnification", is amended to add the following Subsection:

(5)     The Retention applicable to a **Claim** arising solely out of the provision of **Notary Services** shall be $5,000. **Notary Services** means the notarization or certification of a signature of a person physically appearing before a  Notary Public at the time of such notarizaton or certification.

All other provisions of Section VI (B) shall remain unchanged.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 3250 (10 18)

## Specific Transaction Exclusion

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that Section V of the **Policy**, entitled "Exclusions Applicable to all Insuring Agreements", is amended to add the following:

**Specific Transaction Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving any transaction or activities involving Advantage Trust Company or matters, individuals, or entities related thereto.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 3283 (10 18)

## Violation of Lending Law Exclusion

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that Section V of the **Policy** is amended to add the following Exclusion:

<u>**Violation of Lending Law Exclusion**</u> - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of or in any way involving or related to, any actual or alleged violation of federal, state or local, statutory or common law, rule or regulation, relating to the extension or denial of credit, including, but not limited to, any enactment by a state of a version of the Uniform Commercial Code, any usury laws, the Truth-in-Lending Act, Equal Credit Opportunity Act, Fair Credit Reporting Act, Fair Debt Collection Practices, the Home Owners Equity Protection Act of 1994, Fair Credit Billing Act, Real Estate Settlement Procedures Act, as amended, or any similar laws, rules, or regulations; provided that this exclusion will not apply to **Defense Costs**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4021 E (10 18)

## LIMIT PROVISION

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

1.    The following subsections are added to Section VI (A) of the **Policy**:

(4)    The **Insurer's** maximum Limit of Liability under this **Policy** with respect to all **Claims** arising out of or in any way involving **Professional Services** shall not exceed the Limit of Liability provided under the Bankers Professional Liability Insuring Agreement, Broad Form Bankers Professional Liability Insuring Agreement or Broad Form Company Insuring Agreement, whichever is so attached to this **Policy**, regardless as to whether a shared or separate limit is specified in Item 8. of the Declarations for any Insuring Agreement provided to the **Insured** under this **Policy**.

(5)    The **Insurer's** maximum Limit of Liability under this **Policy** with respect to all **Claims** arising out of or in any way involving **Lending Services** shall not exceed the Limit of Liability provided under the Lender Liability Insuring Agreement, Broad Form Lender Liability Insuring Agreement or Broad Form Company Insuring Agreement, whichever is so attached to this **Policy**, regardless as to whether a shared or separate limit is specified in Item 8. of the Declarations for any Insuring Agreement provided to the **Insured** under this **Policy**.

(6)    The **Insurer's** maximum Limit of Liability under this **Policy** with respect to all **Claims** arising out of or in any way involving **Trust Services** shall not exceed the Limit of Liability provided under the Trust Services Liability Insuring Agreement, if so attached to this **Policy**, regardless as to whether a shared or separate limit is specified in Item 8. of the Declarations for such Insuring Agreement provided to the **Insured** under this **Policy**.

2.    The following definitions are added to Section IV of the **Policy**:

**Lending Services** means services involving or relating to an extension of credit, an agreement or refusal to extend credit, **Loan Servicing**, or the collection, restructuring, repossession, or foreclosure of any extension of credit by the **Company.**

**Professional Services** means only those services performed or required to be performed by an **Insured** for or on behalf of a customer of the **Company**:

(1)    for a fee, commission, other monetary compensation, or other remuneration which inures to the benefit of the **Insured**; or

(2)    where a fee, commission, other monetary compensation, or other remuneration which inures to the benefit of the **Insured** and would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**.

**Professional Services** shall not include **Lending Services**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4070 (10 18)

## Employed Lawyers Coverage

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that for the purposes of Insuring Agreement A and Insuring Agreement B only, the **Policy** is amended as follows:

1.    It is understood that the Definition of **Insured Person** found anywhere in the Policy or its attachments is amended to include **Employed Lawyers**.

2.    It is further understood and agreed that with respect to the coverage afforded by this endorsement, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Employed Lawyer**:

     (1)    alleging, arising out of, based upon, attributable to or in any way connected with directly or indirectly legal or professional malpractice, including but not limited to the rendering, or failure to render legal or professional service or advice to others for a fee; or

     (2)    alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of (the inception date of the endorsement) an **Employed Lawyer** knew or could reasonably have foreseen that such **Wrongful Act** could give rise to a **Claim**.

     Coverage provided by this endorsement is specifically excess over any other valid or collectible insurance, (including but not limited to any legal malpractice insurance or professional errors and omissions insurance) and shall only be primary insurance in the event of exhaustion of such other insurance due to losses paid thereunder.

3.    Section IV of the **Policy**, entitled "Definitions," is amended to add the following:

     **Employed Lawyers** means any person admitted to practice law who is, was, or becomes employed as a lawyer full-time and salaried lawyer by the **Company**, but only for **Wrongful Acts** which are committed during the term of employment with the **Company** and while acting solely in the capacity of the employment with the **Company**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4130 (10 18)

## Reputation Protection Coverage

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement as follows:

1.      The attached **Policy** is amended to add the following Insuring Agreements:

## COMPANY REPUTATION COVERAGE

The **Insurer** will pay on behalf of the **Company**, reasonable and necessary **Crisis Expenses** incurred by the **Company** in response to a **Crisis Event** resulting from a covered **Claim** first made during the **Policy Period**. The **Insurer** will indemnify the **Company** for **Crisis Expenses** only if the **Company** incurs such expenses within six (6) months after the reporting of the **Crisis Event** that causes the **Company** to incur such expenses.

The Limit of Liability for Company Reputation Coverage shall be $100,000. The Limit of Liability constitutes a sublimit and therefore shall be part of, and not in addition to the Directors & Officers Liability Coverage Limit of Liability set forth in Item 9 of the Declarations. No Retention shall apply to Company Reputation Coverage.

## DIRECTOR OR OFFICER REPUTATION COVERAGE

The **Insurer** will pay on behalf of the **Insured**, reasonable and necessary **Crisis Expenses** specifically incurred in response to a **Director or Officer Crisis Event** resulting from a covered **Claim** first made during the **Policy Period**.  The **Insurer** will indemnify the **Insured** for a **Director or Officer Crisis Event** only if the **Insured** incurs such expenses within six (6) months after the reporting of the **Director or Officer Crisis Event** that causes the **Insured** to incur such expenses.

The Limit of Liability for Director or Officer Reputation Coverage shall be $100,000. The Limit of Liability constitutes a sublimit and therefore shall be part of, and not in addition to the Directors & Officers Liability Coverage Limit of Liability set forth in Item 9 of the Declarations. No Retention shall apply to Director or Officer Reputation Coverage.

2.      Section IV of the **Policy**, entitled "Definitions", is amended to add the following;

**Crisis Event** means:

(1)     a covered **Claim** made against an **Insured** during the **Policy Period** that the **Insurer** reasonably believes will exceed 75% of the Limit of Liability of the Insuring Agreement covering the **Claim**; or

(2)     a reduction of more than 25% in the **Company's** market capitalization during the **Policy Period** that can reasonably be attributed to a covered **Claim**.

**Crisis Expenses** means the reasonable fees, costs, charges and expenses incurred, with the prior written consent of the **Insurer**, by the **Insured** for an external public relations or crisis management consultant (other than a law firm) to mitigate the **Negative Publicity** resulting from a **Crisis Event** or a **Director or**

PD 4130 (10 18)

**Officer Crisis Event**.

**Director or Officer Crisis Event** means **Negative Publicity** specifically regarding and referencing a **Director or Officer** in connection with a **Crisis Event.**

**Negative Publicity** means information published to the public domain by persons other than the **Insured** through newspaper, radio, television, or other similar print or broadcast media, resulting from a **Crisis Event** that has caused a deterioration in the reputation of the **Insured**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4170 (10 18)

## Non-Cancellation Endorsement

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that Section XII (B)(2) of the **Policy**, entitled "Cancellation", is modified to add the following:

(d)     This **Policy** may not be cancelled by the **Insurer** from 09/26/2021 to 09/26/2022 except for failure to pay a premium when due.  If the **Insurer** cancels this **Policy** for nonpayment of premium, the **Insurer** shall provide not less than twenty (20) days notice of its intent to cancel.

All other provisions of Section XII (B)(2) shall remain unchanged.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4220 (10 18)

## Standard "A Side" Coverage Endorsement

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

The **Insurer** shall pay up to $1,000,000 on behalf of the **Insured Persons** for **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period**, the Automatic Extended Reporting Period (if applicable), or, if exercised, the Optional Extended Reporting Period, for a **Wrongful Act** taking place before or during the **Policy Period**.

This extension of coverage shall be in addition to and excess of the D&O Limit of Liability set forth in Item 9 of the Declarations, and no Retention shall apply to this extension of coverage.

The D&O Limit of Liability must be completely exhausted by payment of **Loss** before the **Insurer** shall have any obligation to make any payment for **Loss** under this extension of coverage.

This extension of coverage shall be specifically excess of any insurance available to the **Insured Persons** that is specifically excess of this **Policy** or Insuring Agreement and such excess insurance must be completely exhausted by payment of loss, damages, defense costs, claim expenses or other sums covered thereunder before the **Insurer** shall have any obligation to make any payment for **Loss** under this extension of coverage.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4230 (10 18)

## Mergers, Acquisitions and Changes in Business Activities
## Change Asset Threshold

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that Section XI of the **Policy**, entitled "Mergers, Acquisitions and Changes in Business Activities", is deleted and replaced as follows:

## SECTION XI - MERGERS, ACQUISITIONS AND CHANGES IN BUSINESS ACTIVITIES

A.    If during the **Policy Period**, the **Company**:

(1)    acquires, merges with, or creates any non-bank entity;

(2)    acquires assets or securities through merger, acquisition or creation of a **Subsidiary** and the resulting assets equal or exceed 25% of the **Company's** total assets at the time of the transaction;

(3)    acquires assets which equal or exceed 25% of the **Company's** total assets at the time of the transaction;

(4)    creates or acquires a financial services holding company;

(5)    converts from a bank holding company to a financial services holding company;

(6)    converts from a mutual company to a stock company;

(7)    changes or converts its corporate structure from a C-corporation to an S-corporation;

(8)    acquires any assets resulting from any FDIC or other federal or state regulatory assisted merger or acquisition of assets (whether or not in fact indemnified);

then no coverage shall be afforded under this **Policy** for any **Loss** incurred by the **Company**, such entity, **Subsidiary**, or its **Insured Persons** resulting from any **Claim** arising out of or in any way involving any such transaction, entity, **Subsidiary**, or event, prior to:

(a)    the **Company** providing written notice and any requested information regarding the transaction to the **Insurer** as soon as practicable;

(b)    the **Insurer**, at its sole discretion, agreeing in writing to provide such coverage; and

(c)    the **Company** accepting any special terms, conditions and/or Exclusions and paying any additional premium required by the **Insurer**.

However, with respect to (A)(2) above, this provision shall not apply until ninety (90) days after the merger, acquisition or creation.

B.    If during the **Policy Period**, the **Company** acquires assets or creates or acquires a bank or bank **Subsidiary** and either transaction results in an increase in assets of less than 25% of the **Company's** total assets at the time of the transaction, the **Insurer** agrees to provide automatic coverage for such bank, bank **Subsidiary** and its **Insured Persons** for the remainder of the **Policy Period**.

C.    Any coverage otherwise afforded under this **Policy** for a **Loss** in any way involving the **Company**, any **Subsidiary**, any acquired, merged or created entity or its **Insured Persons**, or any merged or acquired assets, shall not apply to any **Claim** arising out of or directly or indirectly resulting from:

PD 4230 (10 18)

(1)     any **Wrongful Act** or any fact, circumstance or situation committed or allegedly committed prior to the effective date of such acquisition, merger or creation; or

(2)     any other **Wrongful Act**, which, together with a **Wrongful Act** committed or allegedly committed prior to effective date of such acquisition, merger or creation constitute **Interrelated Wrongful Acts**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4310 (10 18)

## Employment Practices Liability Coverage Extension
## Workplace Violence Event Endorsement

In consideration of the premium paid and in reliance upon all statements made in the Declarations and **Application**, the **Insurer**, the **Insured Persons** and the **Company** agree that the Employment Practices Liability Insuring Agreement is amended as follows:

1.    The Employment Practices Liability Insuring Agreement is amended to add the following:

The **Insurer** shall reimburse the **Company** for **Workplace Violence Expenses** resulting from a **Workplace Violence Event** occurring during the **Policy Period** and incurred by the **Company** within 90 days following the **Workplace Violence Event**.

2.    For purposes of this endorsement, the following definitions are added:

**Workplace Violence Event** means any intentional and unlawful:

(1)    act of potentially deadly force involving the use of a lethal weapon; or
(2)    threat of deadly force involving the display of a lethal weapon,

which occurs on or in the **Premises** and which did or could result in bodily injury or death to an **Insured Person**.

**Workplace Violence Expenses** means reasonable fees and expenses, which have been incurred after the prior written approval of the **Insurer** for:

(1)    an independent crisis management consultant for ninety (90) days following the date the **Workplace Violence Event** occurs;
(2)    an independent public relations consultant for ninety (90) days following the date the **Workplace Violence Event** occurs;
(3)    independent crisis mental health specialists for ten (10) days following the date the **Workplace Violence Event** occurs;
(4)    Independent security guard services for up to ninety (90) days;
(5)    an independent forensic analyst;
(6)    a reward, up to $5,000, paid by the **Company** to a natural person who provides information leading to the arrest and conviction of the person(s) responsible for the **Workplace Violence Event**; and
(7)    reasonable medical, mental health, dental and cosmetic expenses for an **Insured Person** which is incurred as a direct result of **Workplace Violence Event**.

**Premises** means buildings, facilities or properties where the **Company** conducts its business.

3.    For purposes of this endorsement, the following exclusions are added:

**Off Premises Exclusion** - The **Insurer** shall not be liable to make any payment for any **Workplace Violence Event** which occurs at any location other than the **Premises**.

**War Exclusion** - The **Insurer** shall not be liable to make any payment for any **Workplace Violence Event**

PD 4310 (10 18)

which in any way arises out of or relates to declared or undeclared war, civil war, insurrection, riot, civil commotion, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization.

**Legal Cost Exclusion** - The **Insurer** shall not be liable to make any payment for any **Workplace Violence Event** which relates to legal costs, judgments, settlements, lawsuits and judicial actions.

**Robbery Exclusion** - The **Insurer** shall not be liable to make any payment for any **Workplace Violence Event** which resulted from the use or threat of force or violence occurring on the **Premises** for the purpose of demanding money, securities or property.

4.    The Limit of Liability afforded under this Workplace Violence Event Endorsement shall be $100,000.  The Limit of Liability under this Insuring Agreement constitutes a sublimit and therefore shall be part of, and not in addition to the Employment Practices Liability Insuring Agreement Limit of Liability as set forth in Item 9 of the Declarations.  No retention shall apply to this extension of coverage.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4317 WE (10 18)

## Policy Modification

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

1.   The following Exclusion is added to Section V of the **Policy**, entitled "Exclusions Applicable to all Insuring Agreements":

   **Non-Compete Exclusion** – The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the alleged breach of any duty or obligation contained or allegedly contained in an employment-related contract, agreement, or policy, whether written or oral, pertaining to retention, separation, non-solicitation, non-compete, non-disclosure, confidentiality, use of company information or similar prohibitions or restrictions on an employee's actions during or following employment.

2.   The Employment Practices Liability Insuring Agreement, if attached to this **Policy**, is amended to:

   A.   Delete the Definition of **Wrongful Employment Act** and replace it with the following:

   **Wrongful Employment Act**, either in singular or plural, means any actual or alleged:

   (1)   **Wrongful Termination**;
   (2)   **Discrimination**;
   (3)   **Harassment**;
   (4)   **Retaliation;**
   (5)   **Workplace Tort**;
   (6)   breach of an employment agreement, other than a collective bargaining agreement; or
   (7)   violation of the Family Medical Leave Act or Uniformed Services Employment and Reemployment Rights Act, or any other violation of any statutory or common law relating to employment other than those statutes or regulations set forth in the Violation of Employment Law Exclusion,

   but only if alleged by or on behalf of an **Employee** or a prospective **Employee**, an individual or a group of individuals, or a governmental agency acting on behalf of an **Employee** or prospective **Employee**.

   The conduct described in items (1) through (7) above include such matters when conducted over the Internet, email, instant messaging, texting or social media through any computer or device owned or leased by an **Insured**.

   B.   Add the following Definitions:

   **Retaliation** means any actual or alleged **Wrongful Termination** or other adverse employment action against an **Employee** on account of such **Employee's** exercise of rights protected by law, refusal to violate any law, reporting or threat to report alleged violations of law by an **Insured**, or on account of the **Employee** having cooperated with or testified in a proceeding or investigation regarding alleged violations of law by an **Insured**.

PD 4317 WE (10 18)

**Workplace Tort** means any:

**(1)**   wrongful failure to employ or promote; wrongful deprivation of career opportunity; wrongful demotion, wrongful discipline;

**(2)**   negligent evaluation, negligent supervision, negligent hiring, negligent retention;

**(3)**   failure to create or enforce adequate workplace or employment policies and procedures;

**(4)**   employment-related misrepresentation;

**(5)**   employment-related libel, slander, humiliation, defamation, or invasion of privacy;

**(6)**   employment-related wrongful infliction of emotional distress, mental anguish or humiliation; or

**(7)**   workplace bullying,

but only if such act is alleged in connection with a **Claim** alleging **Wrongful Termination**, **Discrimination**, **Harassment**, **Retaliation**, breach of an employment contract, or a violation of any statutory or common law relating to employment other than those statutes or regulations set forth in the Violation of Employment Law Exclusion.

C.      Add the following Exclusion:

**Non-Compete Exclusion** – The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving the alleged breach of any duty or obligation contained or allegedly contained in an employment-related contract, agreement, or policy, whether written or oral, pertaining to retention, separation, non-solicitation, non-compete, non-disclosure, confidentiality, use of company information or similar prohibitions or restrictions on an employee's actions during or following employment.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4321 (10 18)

## Employment Practices Modification
## Settlement Provision

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Employment Practices Liability Insuring Agreement is amended by deleting and replacing Subsection (G)(2) with the following:

G.      For purposes of this Insuring Agreement, Subsection (2) of Section VIII (A) of the **Policy**, entitled "No Duty to Defend", is deleted and replaced with the following:

(2)     The **Insured** shall not incur **Defense Costs**, admit liability for, settle, or offer to settle any **Claim** without the **Insurer's** prior written consent, which shall not be unreasonably withheld.  The **Insurer** shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.  If the **Insured** receives a settlement offer that the **Insurer** deems reasonable and the **Insured** withholds consent to such settlement, the **Insurer's** liability for all **Loss** on account of such **Claim** shall not exceed:

(a)     the amount for which the **Claim** could have been settled; plus
(b)     **Defense Costs** accrued as of the date such settlement was proposed; plus
(c)     80% of the covered **Loss**, including **Defense Costs** incurred after the date such settlement was proposed, in excess of the amount for which the **Claim** could have been settled.

Notwithstanding the foregoing, if the proposed settlement amount does not exceed the applicable Retention set forth in the Declarations, Subpart (c) above shall not apply and the **Insurer's** liability for all **Loss** arising from such **Claim** shall not exceed the amount for which the **Claim** could have been settled plus **Defense Costs** incurred as of the date such settlement was proposed.

Any amounts paid by the **Insurer** under Subparts (a), (b), or (c) above shall be part of and not in addition to the applicable Limit of Liability set forth in Item 9 the Declarations.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4335 (10 18)

## Employment Practices Liability Modification

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Employment Practices Liability Insuring Agreement is modified as follows:

1.    The definition of **Discrimination** is deleted and replaced as follows:

**Discrimination** means:

(1)    the termination of employment, the failure or refusal to hire or promote, the demotion of, or the employment-related defamation of any individual because of race, color, creed, national origin, sex, sexual orientation or preference, religion, age, gender, disability or handicap, pregnancy, or any other legally protected status.

(2)    allegations against the **Company** or an employee, acting in their capacity as such, of discrimination because of race, color, creed, national origin, sex, sexual orientation or preference, religion, age, gender, disability or handicap, pregnancy, or any other legally protected status brought by any customer(s), client(s), or other individual(s), class of individuals or group, and whether direct, indirect, intentional or unintentional.

2.    The following definitions are added:

**Lending Services** means services involving or relating to an extension of credit, an agreement or refusal to extend credit, **Loan Servicing**, or the collection, restructuring, repossession, or foreclosure of any extension of credit by the **Company**.

**Professional Services** means only those services performed or required to be performed by an **Insured** for or on behalf of a customer of the **Company**:

(1) for a fee, commission or other monetary compensation;

(2) where a fee, commission or other monetary compensation would usually be received by the **Insured** but for business or other reasons is waived by the **Insured**; or

(3) for other remuneration which inures to the benefit of the **Insured**.

3.    The following exclusions are added:

**Lending Services Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way relating to **Lending Services**.

**Professional Services Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way relating to **Professional Services**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of **Policy** other than as above stated.

PD 4340 (10 18)

## Fiduciary Liability Insuring Agreement Coverage Extension
## Fiduciary Penalty Coverage

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Fiduciary Liability Insuring Agreement is amended as follows:

1.      Item 7 of the Declarations Page is amended to include the following:

| Insuring Agreement | Item 8. "X" Indicates Separate Limit | Item 9. Limit of Liability | Item 10. Retention | Item 11. (a) Annual Premium | Item 11. (b) Actual Premium |
|---|---|---|---|---|---|
| **PPA Penalties** | | $100,000 | $0 | N/A | N/A |
| **PPACA Penalties** | | $100,000 | $0 | N/A | N/A |
| **Section 502(c) Penalties** | | $100,000 | $0 | N/A | N/A |
| **Section 4975 Taxes** | | $100,000 | $0 | N/A | N/A |

2.      For purposes of this Endorsement only, it is understood that Subsection (1) of the definition of **Loss** as found in the Fiduciary Liability Insuring Agreement is deleted and replaced as follows**:**

   (1)     taxes, criminal or civil fines or penalties imposed by law; provided that this exception to the definition of **Loss** shall not apply to

   (i)      any **Voluntary Correction Program Fees**;

   (ii)     **HIPPA Civil Money Penalties**;

   (iii)    **PPA Penalties**;

   (iv)    **PPACA Penalties**;

   (v)     **Section 502(c) Penalties**; or

   (vi)    **Section 4975 Taxes**.

3.      For purposes of this Endorsement only, the following definitions are added:

   **PPA Penalties** means any civil money penalties imposed upon an **Insured** for a violation of Section 507 of the Pension Protection Act of 2006, as amended, and any rules or regulations promulgated thereunder.

   **PPACA Penalties** means any civil money penalties imposed upon an **Insured** for an inadvertent violation of the Patient Protection and Affordable Care Acts, as amended, and any rules or regulations promulgated thereunder.

   **Section 502(c) Penalties** means civil money penalties imposed on an **Insured** under ERISA Section 502(c).

   **Section 4975 Taxes** means the 15% or less tax imposed on an **Insured** as a penalty pursuant to the IRS Code Section 4975.

4.      The Limit of Liability under this Fiduciary Penalty Coverage constitutes a sublimit and therefore shall be part of, and not in addition to the Fiduciary Liability Insuring Agreement Limit of Liability as set forth in

PD 4340 (10 18)

Item 9 of the Declarations.


For purposes of the coverage afforded by this Endorsement only, no Retention shall apply to this extension of coverage.


This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of **Policy** other than as above stated.

PD 4350 (10 18)

## Fiduciary Liability Modification
## Settlor Coverage Endorsement

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Fiduciary Liability Insuring Agreement is modified as follows:

1.    The following Insuring Agreement is added:

### SETTLOR COVERAGE

The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from **Claims** first made during the **Policy Period** or the Extended Reporting Period against the **Insured** for which the **Insured** is legally obligated to pay for **Wrongful Acts** resulting from the **Insured** acting in the capacity as a settlor of any **Employee Benefit Plan**.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of **Policy** other than as above stated.

PD 4430 (10 18)

# Vista Endorsement

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

1.          Section II of the **Policy**, entitled "Additional Coverages," is amended to add the following:

C.          **UNLIMITED EXTENDED REPORTING PERIOD FOR RETIRED OR RESIGNED DIRECTORS AND OFFICERS**

If any **Director or Officer** retires or resigns from all of their positions as **Director or Officer** during the **Policy Period** of this Directors & Officers Liability **Policy** issued to the **Named Insured** by the **Insurer** and this **Policy** is not renewed or replaced; or is renewed or replaced but the renewal or replacement policy does not provide coverage for such **Director or Officer**, then such retired or resigned **Director or Office**r shall be entitled to an Extended Reporting Period of unlimited duration at no additional premium.

This coverage shall not apply to any **Directors or Officers** who retired or resigned from their positions with an **Insured** after any of the events specified in Section XII(C)(1)(a), (b), or (c).

D.          **EXTRADITION, DEPORTATION AND ASSET SEIZURE COVERAGE**

The **Insurer** will pay on behalf of the **Insured,** reasonable and necessary fees, costs, charges and expenses incurred, with the prior consent of the **Insurer**, by a **Director or Officer** defending a proceeding resulting directly from a covered **Claim** seeking an order for:

A.          The confiscation, freezing, or charge of assets of a **Director or Officer**;
B.          Temporary or permanent prohibition of a **Director or Officer** from holding the office or performing the function of a director or officer of any entity;
C.          The official detention of a **Director or Officer** or the restriction of a **Director or Officer's** liberty to a specified residence;
D.          The prohibition of a **Director or Officer** from departing a country;
E.          The deportation of a **Director or Officer** following the revocation of a **Director or Officer's** current and valid immigration status for any reason other than the conviction of a crime;
F.          any official request for extradition of an Insured Person (or the execution of a warrant for the arrest of an Insured Person where such execution is an element of extradition).

The Limit of Liability for Extradition, Deportation and Asset Seizure Coverage shall be $250,000. The Limit of Liability constitutes a sublimit and therefore shall be part of, and not in addition to the Directors & Officers Liability Coverage Limit of Liability set forth in Item 9 of the Declarations. A $10,000 Retention shall apply to Extradition, Deportation and Asset Seizure Coverage.

PD 4430 (10 18)

**E.    PRE-CLAIM INQUIRY COST COVERAGE**

Solely for the purposes of Insuring Agreement A (Insured Persons Liability Coverage) and Insuring Agreement B (Company Indemnification Coverage), the **Insurer** will pay on behalf of the **Insured**, reasonable and necessary **Pre-Claim Inquiry Costs** specifically incurred in response to a **Corporate Review.**

The coverage provided by this section will apply, however, only if the following conditions precedent to coverage are satisfied: (a) the **Pre-Claim Inquiry Costs** are incurred, and engagements are made, with the prior written approval of the **Insurer**; and (b) the **Corporate Review** occurs during the **Policy Period** and the **Insured** notifies the **Insurer** within 30 days of discovery of the **Corporate Review**.

The Retention and Limit of Liability for Pre-Claim Inquiry Cost Coverage will be the same as the Retention and Limit of Liability for Insuring Agreement B as set forth in Items 9 and 10 of the Declarations. The Limit of Liability for Pre-Claim Inquiry Cost Coverage constitutes a sublimit and therefore shall be part of, and not in addition to the Directors & Officers Liability Coverage Limit of Liability set forth in Item 9 of the Declarations.

2.    Section IV of the **Policy**, entitled "Definitions," is amended to delete and replace the following definitions:

**Claim**, either in singular or plural, means any of the following instituted against an **Insured Person** or against the **Company**, but only to the extent coverage is granted to the **Company**:

(1)    a written demand, other than a **Special Committee Inquiry Demand**, a **Books and Records Request** or a **Corporate Review**, for monetary damages or non-monetary relief (including injunctive relief);

(2)    a civil proceeding commenced by the service of a complaint or similar pleading;

(3)    a criminal proceeding commenced by a return of an indictment;

(4)    an arbitration proceeding, commenced by the receipt of a demand for arbitration, or mediation proceeding in which monetary damages are sought;

(5)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

(6)    with respect to Insuring Agreement D only, a **Special Committee Inquiry Demand** or a **Books and Records Request**, that is received during the **Policy Period** or, if applicable, Extended Reporting Period;

(7)    with respect to Pre-Claim Inquiry Cost Coverage only, a **Corporate Review** requested by the Company during the **Policy Period** or, if applicable, Extended Reporting Period; or

(8)    a written request to toll or waive a statute of limitations, relating to a potential **Claim** described in Subsections (1) through (6) above, that is received and reported during the **Policy Period** or, if applicable, Extended Reporting Period, by an **Insured Person** or the **Company** (but only to the extent coverage is granted to the **Company**);

for a **Wrongful Act** including any appeals from such proceedings.

Solely for the purposes of Insuring Agreement A (Insured Persons Liability Coverage) and Insuring

PD 4430 (10 18)

Agreement B (Company Indemnification Coverage), the definition of **Claim** shall also include:

(8)    a request by a **Regulatory Agency** for a **Director or Officer** to appear for an interview or meeting with respect to the insured capacity of such **Director or Officer** or the **Company's** business activities; or

(9)    a proceeding for a **Wrongful Act** commenced by the United States Securities and Exchange Commission after service of a subpoena or Wells Notice upon a **Director or Officer**;

(10)   a written request for information or documents issued by United States Securities and Exchange Commission or National Association of Securities Dealers which is investigative in nature and part of a preliminary investigation into a **Wrongful Act**.

(11)   a proceeding for a **Wrongful Act** commenced by the arrest and detainment or incarceration of a **Director or Officer** by a law enforcement authority in a jurisdiction outside of the United States.

With respect to (8), (9), (10), and (11) above:

(a)    the **Insurer** shall not pay for any amount incurred as a result of any oral questions, non-investigative questions into securities filings, or any routine or regularly scheduled **Regulatory Agency** oversight or compliance examination, audit, or inspection; and

(b)    any request or proceeding shall not be deemed a **Claim** first made during the **Policy Period** until such **Claim** is reported pursuant to Section X, entitled "Notice of Claims and Potential Claims", and the **Insurer** shall not pay for **Loss** incurred in responding to any request or demand for documents, testimony or information before such **Claim** is reported pursuant to Section X of the **Policy**.

**Loss** means **Investigative Costs**, **Books and Records Costs, Pre-Claim Inquiry Costs, Defense Costs,** and any amounts which the **Insured** is legally obligated to pay resulting from a **Claim,** including damages, judgments, settlements, and pre- and post-judgment interest.   "Damages" shall include punitive, exemplary or multiplied damages, if and to the extent such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the **Insured**, the **Company**, or to the **Claim** giving rise to such damages.  **Loss** shall also include **Sox 304 Costs** and **Dodd-Frank 954 Costs**.

**Loss** shall not include:

(1)    any taxes, criminal or civil fines or penalties imposed by law; except:

(a)    solely for the purposes of Insuring Agreement (A), any tax imposed upon an **Insured Person** in his or her capacity as such in connection with any bankruptcy, receivership, conservator ship, or liquidation of the **Company**, to the extent that such tax is insurable under the law pursuant to which this **Policy** is construed;

(b)    civil fines and penalties against any **Insured Person** pursuant to section (2)(g)(B) of the Foreign Corrupt Practices Act of 1977, as amended; and

(c)    civil penalties assessed against any Insured Person pursuant to section 308 of the Sarbanes-Oxley Act of 2002, as amended;

(2)    any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt;

PD 4430 (10 18)

(3)    costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

(4)    any amounts the **Company** is obligated to pay pursuant to any express written or oral contract or agreement existing prior to the date the **Claim** was made;

(5)    the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**;

(6)    any restitution, disgorgement, or payment of similar payments including but not limited to the return of fees, commissions or charges for the **Company's** services; or

(7)    any matters which are uninsurable under the law pursuant to which this **Policy** is construed; provided that the **Insurer** shall not assert that any amount attributable to violations of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, is subject to this subsection (7), unless such amount is determined to be uninsurable in a final non-appealable adjudication (other than a declaratory proceeding or action brought by or against the **Insurer**).

3.    Section IV of the **Policy**, entitled "Definitions," is amended to add the following:

**Corporate Review** means any request by the **Company**, in connection with an inquiry or investigation by a **Regulatory Agency**, for a **Director or Officer** to appear for an interview or meeting, to produce documents, or to answer questions with respect to the **Company's** business activities or the insured capacity of such **Director or Officer**. A **Corporate Review** does not include routine regulatory audits, examinations, hearings, inspections or reviews.

**Dodd-Frank 954 Costs** means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by an **Insured** defending against a demand for the return of amounts required to be repaid pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act.  **Dodd-Frank 954 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Insured Person** pursuant to Section 954.

**Pre-Claim Inquiry Costs** means reasonable and necessary legal fees and expenses incurred by the **Insured** with the prior written consent of the **Insurer** in responding to or investigating the **Corporate Review.  Pre-Claim Inquiry Costs** do not include salaries, wages, overhead, or benefit expenses.

**Regulatory Agency** means any federal, state, local or foreign law enforcement or governmental authority (including, the U.S. Department of Justice, the Federal Deposit Insurance Corporation, the U. S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body.

**SOX 304 Costs** means the reasonable and necessary fees, costs and expenses consented to by the

PD 4430 (10 18)

**Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the Named Entity defending against a demand for return of amounts required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such executive pursuant to Section 304(a).

4.    Section V of the **Policy**, entitled "Exclusions Applicable to All Insuring Agreements," is amended to delete and replace the following Exclusions:

**Fraud/Violation of Law Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss,** other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving any deliberately fraudulent, dishonest or criminal act or any willful violation of any civil or criminal statute, regulation or law by the **Insured**, provided a final non-appealable judgment or final non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the **Insurer**) establishes such deliberately fraudulent, dishonest, or criminal act or such willful violation of statute, regulation or law.

**Illegal Profit/Payment Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss**, other than **Defense Costs**, in connection with any **Claim** arising out of or in any way involving:

(1)    any **Insured Person** gaining any personal profit, personal remuneration, or other personal advantage to which the **Insured Person** was not legally entitled if a final non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the **Insurer**) establishes such profit, remuneration or other advantage;

(2)    the **Company** gaining any profit, remuneration, or other advantage to which the **Company** was not legally entitled if a final non-appealable adjudication in any underlying proceeding or action (other than a declaratory proceeding or action brought by or against the **Insurer**) establishes such profit, remuneration or other advantage;

(3)    payment by the **Company** of inadequate or excessive consideration in connection with its purchase of **Company** securities; or

(4)    conflicts of interest, engaging in self-dealing, or acting in bad faith.

5.    Section VI of the **Policy,** entitled "Limit of Liability, Retention and Indemnification", is amended to delete and replace Subsection (B)(2) as follows:

(2)    If the **Company** is legally permitted or required to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss**, regardless of whether actual indemnification or advancement is granted, the Retention applicable to Insuring Agreement B (Company Indemnification Coverage) shall apply to such **Loss**, unless the **Company**, solely by reason of its **Financial Impairment**, does not make indemnification or advancement.

Solely with respect to Insuring Agreement (A) and Insuring Agreement (B), this **Policy** has been issued to the **Insured** with the understanding and agreement that each **Company** agrees to fulfill its indemnification obligations to the fullest extent permitted by:

(1)    any statutory or common law, or

PD 4430 (10 18)

(2)    any contract or agreement providing an indemnification obligation exceeding any such statutory or common law, to any **Insured Person**.

Notwithstanding any provision to the contrary, if the **Company** refuses to indemnify any **Director or Officer** for **Loss** covered under Insuring Agreement B within the applicable Retention as required by the Policy, the **Insurer** will advance such amounts on behalf of the **Director or Officer** until either: (1) the **Company** agrees to pay such amounts; or (2) the Retention has been satisfied.  The **Company's** failure to indemnify a **Director or Officer** will be deemed to have occurred if the **Company** has neither paid such amounts on behalf of the **Director or Officer** nor acknowledged its obligation to do so within 60 days of the **Director or Officer**'s written demand to the **Company** for such indemnification.

If the **Insurer** advances such amounts, or pays as **Loss** any indemnification owed to any **Insured Person** by any **Company**: (1) such payments will reduce the Limits of Liability set forth in the Declarations; (2) the **Insurer's** payment of such amounts does not waive or compromise any of its rights to recover those payments from such **Company**; and (3) the **Insurer** will be subrogated to the **Director or Officer**'s rights of recovery against the **Company** for the amount of such payments.

6.    Section X of the **Policy**, entitled "Notice of Claims and Potential Claims," is amended to delete and replace Subsection (A) as follows:

A.    The **Insured** shall, as a condition precedent to any rights under this **Policy**, give the **Insurer** written notice, as soon as practicable, of any **Claim** first made and brought to the attention of an **Executive Officer** during the **Policy Period** or Extended Reporting Period, but in no event later than:

(1)    if this **Policy** expires and is renewed with the **Insurer**, one hundred and eighty (180) days after the end of the **Policy Period**; provided that, if the **Company** can prove to the **Insurer's** satisfaction that it was not reasonably possible for the **Insured** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the **Insurer** shall waive the foregoing time period;

(2)    if this **Policy** expires (or is otherwise terminated) without being renewed with the **Insurer** and if no Extended Reporting Period is purchased, ninety (90) days after the effective date of such expiration or termination; or

(3)    the expiration date of the Extended Reporting Period, if purchased, provided that, if the **Insurer** sends written notice to the **Company** stating that this **Policy** is being terminated for nonpayment of premium, the **Insureds** shall give the **Insurer** written notice of such **Claim** prior to the effective date of such termination.

7.    Section XIII of the **Policy**, entitled "Representations and Severability", is amended to delete and replace Subsection (B) as follows:

B.    <u>**SEVERABILITY**</u> –

(1)    No statements, representations, or information contained in the **Application**, and no

PD 4430 (10 18)

knowledge possessed by any **Insured** shall be imputed to any other **Insured Person** for purposes of coverage under **the Policy**.

(2)    If any statements, representations or information (including knowledge of any misrepresentation or non-disclosure regarding the **Application**) possessed by an **Insured Person** is not truthfully disclosed, and there is a **Claim** made based upon, arising from or in consequence of such untruthful or inaccurate statements, representations or information, no coverage shall be afforded under any Insuring Agreement, for any such **Claim** as to:

    (a)    any **Insured Person** who knew of such untruthful or inaccurate statements, representations or information;

    (b)    the **Company**, to the extent it indemnifies, or is obligated to indemnify, any **Insured Person** in Item (a) above; or

    (c)    the **Company** if any past, present, or future chief financial officer, in-house general counsel, chief executive officer, president, chairman of the board, or equivalent position, knew of such untruthful or inaccurate statements, representations, or information (whether or not such individual knew of such untruthful or inaccurate statements, representation or information in the **Application**).

(3)    The **Insurer** shall not be entitled under any circumstances to rescind Insuring Agreement A.

8.    Section XIV of the **Policy**, entitled "General Terms and Conditions", is amended to delete and replace Subsection (G), entitled "Other Insurance or Indemnification", as follows:

G.    <u>**OTHER INSURANCE OR INDEMNIFICATION**</u> - This **Policy** shall not be subject to the terms of any other insurance. All **Loss**, including **Defense Costs**, payable under this **Policy** shall be excess to:

    (1)    any other existing valid and collectible insurance including but not limited to, any insurance under which there is a duty to defend, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**; and

    (2)    indemnification to which an **Insured** is entitled from any entity other than the **Company**.

As respects the **Pollution Exclusion** (modification to Section V referenced above), this **Policy** shall be specifically excess of and shall not contribute with any primary policy providing coverage for pollution liability.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 4500-MR (10 18)

## Multiple Year Policy Endorsement

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

1.   The **Company** must give the **Insurer** written notice, as soon as practicable, if any of the following occur during the **Policy Period**:

   a)   a **Change of Control**;

   b)   the **Company's** tangible equity capital falls below six percent (6%) of tangible assets;

   c)   the **Company's** non-performing assets (loans greater than ninety (90) days past due, non-accruals, and Other Real Estate Owned) are greater than thirty percent (30%) of tangible equity capital or risk based capital;

   d)   the receipt of a regulatory order by the **Company** from or the entry by the **Company** into, any agreement or memorandum of understanding with, any regulatory agency or authority having jurisdiction over it, including any written warning or criticism by such regulatory agency or authority in connection with any actual or alleged violation by the **Company** of any provision of a federal or state statute;

   e)   the **Insurer** has paid a loss, claim or damage payment in excess of $25,000;

   f)   the **Company's** annual asset growth rate exceeds 25%; or

   g)   the **Company's** aggregate **Marijuana Business** loan value to the **Company's** total loan value is greater than 5% or the total value of **Company** loans extended to **Marijuana Businesses** exceed $50,000,000; or

   h)   the **Company's** aggregate **Marijuana Business** deposit value to the **Company's** total deposit value is greater than 5% or the total value of **Company** deposits for **Marijuana Businesses** exceed $50,000,000.

2.   Section IV, entitled "Definitions", is amended to add the following:

   **Change of Control** means a change in:

   (1)   the power to determine the management or policy of the **Company** by virtue of voting stock or voting rights ownership (including rights with respect to withdrawal accounts); or

   (2)   ownership of voting stock or voting rights which results in direct or indirect ownership by a stockholder or an affiliated group of stockholders of ten percent (10%) or more of the outstanding voting stock or voting rights of the **Company**.

   **Marijuana Business** means any business that:

   (1)   engages in marijuana commerce including, without limitation, the growth, production, processing, sale, marketing, or distribution of marijuana or marijuana-derived products; or

   (2)   derives a material portion of its revenue or profit from the growth, production, processing, sale, marketing, or distribution of marijuana or marijuana-derived products.

PD 4500-MR (10 18)

3.    If during any **Policy Year** any of the transactions or events described in Number 1 above have occurred, then effective as of the end of the **Policy Year** in which such transaction or event occurs, the **Insurer** will be entitled to impose additional terms, conditions and limitations of coverage and to charge additional premium as the **Insurer**, in its sole discretion, may require.  If the **Company** declines to accept any additional terms, conditions or limitations of coverage or to pay any additional premium which the **Insurer** requires pursuant to this Endorsement, then this **Policy** will be deemed to have been cancelled by the **Company** effective as of the end of the **Policy Year** in which such transaction or event occurred.

4.    If the **Company** cancels the **Policy** in accordance with this Endorsement, the **Insurer** will return the unearned premium on a pro-rata basis.

5.    Nothing herein shall affect the **Insurer's** right to cancel or nonrenew the **Policy** in accordance with Section XII (B) of the **Policy**, entitled "Insurer Cancellation or Nonrenewal".

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

PD 8111 (10 18)

## ECONOMIC AND TRADE SANCTIONS CLAUSE

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

PD 9999 (10 18)

## In Witness Clause

In Witness Whereof, we have caused this **Policy** to be executed and attested, and, if required by state law, this **Policy** shall not be valid unless countersigned by our authorized representative.

**GREAT AMERICAN SECURITY INSURANCE COMPANY**

Sue C. Erhart
Secretary

Gary Gruber
President

PD 8000 KS (10 18)

## KANSAS AMENDATORY ENDORSEMENT

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the **Policy** is amended as follows:

1.  Section IV of the **Policy**, entitled "Definitions", is amended to delete and replace the definition of **Application** as follows**:**
    **Application** means:

    (1)   all signed applications for the procurement of this **Policy** and any attachments or other materials submitted to the **Insurer** in support of the procurement of this **Policy**; and

    (2)   any publicly available information published or filed by or with a recognized source, agency or institution regarding the **Insured** in the twelve (12) months preceding the **Policy's** inception, and any amendments thereto, whether or not submitted with any signed application.

    The **Application** is deemed to be attached to and incorporated into this **Policy**, as if physically attached.


2.  The definition of **Loss** as stated anywhere in the **Policy** is amended to add the following:

    Notwithstanding any other provisions, the definition of **Loss** shall not include any fines or penalties resulting from any intentional acts or illegal activity.

    The remainder of the definition of **Loss** shall remain unchanged.

3.  Section IX (B) of the **Policy**, entitled "Arbitration", is deleted and replaced as follows:

    B.   <u>**ARBITRATION**</u> - The **Insurer** and the **Insured** agree to use their best efforts to reach a proper allocation of **Defense Costs**.  If an irreconcilable dispute between the **Insurer** and the **Insured** arises:

    (1)   no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

    (2)   the **Insurer** shall advance on a current basis **Defense Costs** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined; and

    (3)   after the dispute has arisen, if both the Insurer and the Insured agree, they may voluntarily submit the irreconcilable dispute to arbitration.  The arbitration shall be conducted in accordance with the then current rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the insured, one arbitrator selected by the Company, and a third independent arbitrator selected by the first two arbitrators. Judgement upon the arbitration award may be entered in any court having jurisdiction.  The arbitrators have the power to decide any dispute between the **Insurer** and the **Insured** concerning the application or interpretation of this Endorsement. However, the arbitrator shall have no power to change or add to the provisions of this Endorsement. In any such arbitration, each party will bear its own legal fees and expenses.

PD 8000 KS (10 18)

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** will be applied retroactively to all **Defense Costs**, notwithstanding any prior advancement to the contrary.  Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

All other provisions of Section IX shall remain unchanged.

4.    Section XII (B) (2) of the **Policy**, entitled "Cancellation", is amended to delete and replace Subsection (a) i as follows:

(a)    This **Policy** may be cancelled by the **Insurer** by giving to the **Named Insured** written notice stating when such action shall become effective and the reason(s) therefore.  The **Insurer** shall only cancel this **Policy** for the following reasons:

(i)    nonpayment of premium;

(ii)    the **Policy** was issued because of a material misrepresentation;

(iii)    any **Insured** violated any of the material terms and conditions of the **Policy**;

(iv)    unfavorable underwriting factors, specific to the **Insured**, exist that were not present at the inception of the **Policy**;

(v)    a determination by the commissioner that continuation of coverage could place the **Insurer** in a hazardous financial condition or in violation of the laws of this state; or

(vi)    a determination by the commissioner that the **Insurer** no longer has adequate reinsurance to meet the **Insurer's** needs.

All other provisions of Section XII shall remain unchanged.

This Endorsement shall be effective as of 12:01 a.m. on 09/26/2021.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the **Policy** other than as above stated.

The regulatory requirements of this Amendatory Endorsement shall take precedence over any provisions of the **Policy** or any endorsement to the **Policy**, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such **Policy** or endorsement provisions comply with the applicable insurance laws of the state.