IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

OTTAWA BANCSHARES, INC.,

    Plaintiff,

    v.

GREAT AMERICAN SECURITY
INSURANCE COMPANY,

    Defendant.

Case No. 2:23-2444-JAR-TJJ

# MEMORANDUM AND ORDER

Plaintiff Ottawa Bancshares, Inc. ("Ottawa Bancshares") brings this five-count case against its insurer, Great American Security Insurance Company ("Great American"), for declaratory judgment, bad faith, and breach of contract arising out of Defendant's denial of Plaintiff's insurance claim. This matter is before the Court on Great American's Motion to Dismiss for Failure to State a Claim (Doc. 5). The motion is fully briefed, and the Court is prepared to rule.[1] For the reasons discussed below, the Court denies Defendant's motion.

**I.    Facts**

The following facts are either alleged in the Complaint or taken from the documents attached thereto.[2] The well-pled facts alleged in the Complaint are assumed to be true for purposes of deciding this motion.

---

[1] The Court finds further argument would not be helpful; the Court denies Great American's request for oral argument.

[2] *See* Fed. R. Civ. P. 10(c).

This is an insurance coverage dispute. The policy at issue is a Directors & Officers Liability Policy ("Policy") that Great American issued to Ottawa Bancshares. The policy has a three-year term, September 26, 2021 to September 26, 2024.[3]

On February 18, 2022, Methods Research, Inc. ("Methods Research") sent Ottawa Bancshares a pre-suit demand letter detailing certain claims against it.[4] Ottawa Bancshares did not notify Great American it received the demand letter. Instead, Ottawa Bancshares attempted to resolve the matter on its own.

Unable to resolve the dispute, on March 24, 2023, Methods Research filed suit against Ottawa Bancshares. Ottawa Bancshares provided notice of the case to Great American on April 3, 2023, ten days after the suit was filed but more than a year after Ottawa Bancshares received the demand letter. The lawsuit's claims were related to the claims made in the February 18, 2022 demand.[5] Great American denied coverage because it asserted Ottawa Bancshares did not provide timely notice after it received the demand.[6]

The Policy's definition of "Claim" includes "a written demand . . . for monetary or non-monetary relief that is received during the Policy Period . . . by an Insured Person or the Company."[7] The Policy requires policyholders provide notice of a claim "as soon as practicable" ("Prompt Notice Requirement").[8] The parties agree that the substantive provisions

---

[3] Doc. 6 at 3.

[4] Doc. 1-2.

[5] Ottawa Bancshares unsuccessfully attempts to distinguish the demand letter's claims from the lawsuit's claims; the lawsuit alleged new claims and theories of recovery, including tort and equitable theories. Doc. 14 at 5. However, the Parties do not dispute the fact that the demand letter and lawsuit reference the same alleged breach of contract.

[6] Doc. 1-4.

[7] Doc. 1-1 at 8.

[8] *Id.* at 21.

2

of the Policy cover the claims, which include both the Methods Research demand and the lawsuit it subsequently filed.

The Policy also includes a Multiple Year Policy Endorsement.[9]  Among other things, the endorsement provides for underwriting each policy year upon the occurrence of certain events. Specifically, the endorsement states Great American may "impose additional terms, conditions and limitations of coverage and . . . charge [an] additional premium" at the beginning of a policy year if, *inter alia*, Great American "has paid a loss, claim or damage payment in excess of $25,000."[10]  In the event Great American altered the policy terms based upon this provision, Ottawa Bancshares had the option to accept the new terms or reject them, in which case the Policy is canceled.[11]

The Policy is a "claims made" policy, not an occurrence policy.  Occurrence policies pay claims when the events that give rise to the claim occur during the policy's term.  Claims made policies only pay claims that are lodged against its insured during the policy's term plus any applicable extension period.  As such, coverage under a claims made policy is triggered when the claim is reported to the insurer.

In sum, the Policy here has two notice requirements.  First, the insured must provide notice of a claim promptly.  Second, the insured must provide the notice during the policy period.

## II. Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative

---

[9] *Id.* at 76.

[10] *Id.* at 76–7.

[11] *Id.* at 77.

3

level"[12] and must include "enough facts to state a claim for relief that is plausible on its face."[13] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[14] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[15] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[16] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[17]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[18] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[19] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[20] "A claim has facial plausibility when the plaintiff pleads factual content

---

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[13] *Id*. at 570.

[14] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[16] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[17] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[18] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[19] *Id.* at 678–79.

[20] *Id*. at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]

### III. Discussion

Here, there is no dispute that the insurance contract should be interpreted under Kansas law. Under Kansas law, the interpretation and legal effect of an insurance contract is a matter of law to be determined by the court.[22] In construing an insurance policy, a court must consider the instrument as a whole and interpret the policy language in such a way as to give effect to the intent of the parties.[23] "If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense."[24] In such a case, there is no need for judicial interpretation or the application of rules of liberal construction.[25]

However, if the policy language is ambiguous, it must be construed in favor of the insured.[26] "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[27] "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or

---

[21] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[22] *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983); *Gerdes v. Am. Fam. Mut. Ins. Co.*, 713 F. Supp. 2d 1290, 1295 (D. Kan. 2010) (quoting *Goforth v. Franklin Life Ins. Co.*, 449 P.2d 477, 480 (Kan. 1969)).

[23] *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002) (citing *Farm Bureau Mut. Ins. Co. v. Horinek*, 660 P.2d 1374, 1375 (Kan. 1983)); *Magnus, Inc. v. Diamond State Ins. Co.*, 101 F. Supp. 3d 1046, 1054 (D. Kan. 2015) (citing *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998)).

[24] *O'Bryan*, 56 P.3d at 792 (citing *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998)); *Magnus*, 101 F. Supp. 3d at 1054.

[25] *Gerdes*, 713 F. Supp. 2d at 1296.

[26] *Magnus*, 101 F. Supp. 3d at 1054 (citing *Brumley*, 963 P.2d at 1226); *O'Bryan*, 56 P.3d at 793 (citing *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992)).

[27] *Gerdes*, 713 F. Supp. 2d at 1296 (quoting *Catholic Diocese*, 840 P.2d at 459).

more meanings is the proper meaning."[28] A court should not strain to find ambiguity where none exists.[29] "The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean."[30]

The threshold issue in this case is whether Great American can deny coverage for the Methods Research claim based on the Prompt Notice Requirement without showing prejudice. Both sides concede that Kansas, like most jurisdictions, has not considered the question in the context of a claims made policy. The prejudice requirement is often referred to as the "Notice Prejudice Rule."

Great American maintains Ottawa Bancshares' thirteen-month claim notification delay clearly violated the Prompt Notice Requirement and it need not show it was prejudiced by the untimely notice.[31] Defendant requests the Court follow *Philadelphia Indemnity Insurance Company v. Great Plains Annual Conference of the United Methodist Church* (*Great Plains*), a federal court decision construing the Notice Prejudice Rule as inapplicable in the context of a claims made policy.

In *Great Plains*, the insurer sought a declaratory judgment that there was no coverage under either of the two claims made policies at issue in the case because its insured failed to provide timely notice of a claim. Conversely, the insured insisted the Notice Prejudice Rule applied. The *Great Plains* court observed that Kansas courts had not addressed the question of

---

[28] *Id.*

[29] *Id.*

[30] *O'Bryan*, 56 P.3d at 793 (citing *Bugg*, 962 P.2d at 519).

[31] No. 21-cv-01197-HLT-KGG, 2022 WL 522962, at *4 (D. Kan. Feb. 22, 2022) ("*Great Plains*").

6

whether an insurer must establish prejudice for untimely notice under a claims made policy and analyzed how the Kansas Supreme Court would decide the issue.[32]

Initially, the *Great Plains* court noted, "[m]ost federal cases to address this issue generally have found that the notice-prejudice rule does not apply to claims-made policies."[33] The court also pointed out that the policy at issue in *Great Plains* contained a disclaimer stating the policy covered "only those claims first made during the policy period and reported in writing to the insurer pursuant to the terms herein."[34]

The *Great Plains* court discussed the differences between occurrence and claims made policies and the practical implications for the respective "risks that insurers undertake and the premiums that insureds pay."[35]  After examining these issues, the *Great Plains* court concluded the Kansas Supreme Court would not apply the Notice Prejudice Rule to claims made policies.[36]

Ottawa Bancshares contends *Great Plains* is inapposite because unlike the policy at issue in *Great Plains*, the policy here was in effect when Ottawa Bancshares notified Great American of the claim.  In other words, Ottawa Bancshares asserts Great American must show prejudice because it clearly satisfied the "date certain notice provision."  Ottawa Bancshares cites cases from other jurisdictions to support its argument that an insurer must show prejudice to deny payment in the context of a claims made policy when the insurer's denial stems from the insured's failure to comply with the Prompt Notice Requirement.  Additionally, Ottawa

---

[32] *Id.* at *4–6.

[33] *Id.* at *4.

[34] *Id.* at *1.

[35] *Id.* at *6.

[36] *Id.*

7

Bancshares notes that Kansas construes insurance policies against the insurer even when the insured is a sophisticated party and of relatively equal bargaining power.[37]

Notably, each side has provided the Court factually distinguishable cases, and Great American recognizes the dearth of persuasive caselaw on this issue.[38]  Given the lack of on-point authority, the Court will not decide whether the Notice Prejudice Rule applies to the Policy at this stage of the proceedings.  Rather, the parties may further develop their arguments at the summary judgment stage.

Assuming, without deciding, the Notice Prejudice Rule does apply to the Policy, Great American asserts the prejudice issue is ripe for consideration because the Complaint itself demonstrates prejudice.  According to Great American, the thirteen-month notification delay eliminated its ability to investigate the claim, attempt to negotiate a settlement, or otherwise defend the matter before suit was filed.  Additionally, Great American argues that it lost the opportunity for year-over-year underwriting.[39]

Ottawa Bancshares maintains that Great American's argument regarding underwriting is of no moment because it did not have the right to alter the policy due to Method Research's demand letter; the Policy provision that allows underwriting adjustments on a year-over-year basis does not apply to this factual scenario.  Specifically, the triggering events include changes of control, and the insurer's *payment* of certain losses or claims.[40]  Of course, this argument ignores the fact that Great American could not have paid Methods Research's claim because it was not informed of the demand before the lawsuit was filed.  As noted, Great American also

---

[37] *See Coleman Co. v. Cal. Union Ins. Co.*, 960 F.2d 1529, 1532 n.7 (10th Cir. 1992).

[38] Doc. 17 at 2.

[39] As Ottawa Bancshares argues, if the timing of its notice harmed Great American's ability to underwrite, Great American must address the issue when analyzing prejudice.

[40] Doc. 1-1 at 76.

contends the notification delay eliminated its ability to investigate the claim, attempt to negotiate a settlement, or otherwise defend the matter before suit was filed.

Under Kansas law, an insurer can show prejudice from an insured's late notice by "presenting evidence that: (1) its ability to investigate the claim has been lost; or (2) opportunities to negotiate settlement have been lost; or (3) opportunities to defend have been lost."[41]  Clearly, when analyzing these elements, the Court must carefully consider the factual record before determining prejudice; the issue is not ripe for consideration at this stage of the proceedings.

Lastly, Great American asserts that the Court should decide whether Ottawa Bancshares violated the Prompt Notice Requirement at the motion-to-dismiss stage because "under no construction was Ottawa Bancshares' 13-month delay 'as soon as practicable.'" [42]  Whether Ottawa Bancshares complied with the Policy's Prompt Notice provision also requires the Court to thoroughly analyze a developed factual record; the question cannot be resolved at this stage of the proceedings.

**IT IS THEREFORE ORDERED BY THE COURT** that Great American's Motion for Failure to State a Claim (Doc. 5) is denied.

**IT IS SO ORDERED.**

Dated: March 18, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[41] *B.S.C. Holding, Inc., v. Lexington Ins. Co*., 559 Fed. App'x. 663, 665 (10th Cir. 2014) (citation omitted).

[42] Doc. 6 at 14.  Great American's reply refers to Ottawa Bancshares' "admittedly untimely notice." (Doc. 17 at 2).  However, Ottawa Bancshares did not concede its notice was untimely.